William E. Thomson, Jr. (SBN 47195)
wthomson@brookskushman.com
BROOKS KUSHMAN P.C.
601 S. Figueroa St., Suite 2080
Los Angeles, CA  90017-5726
Telephone (213) 622-3003
Facsimile: (213) 622-3053

Frank A. Angileri (*Pro Hac Vice*)
fangileri@brookskushman.com
Thomas W. Cunningham (*Pro Hac Vice*)
tcunningham@brookskushman.com
1000 Town Center, Twenty-Second Floor
Southfield, MI  48075-1238
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351

Attorneys for Defendants
DOMINO'S PIZZA, LLC and DOMINO'S PIZZA, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| AMERANTH, INC.<br><br>v.<br><br>DOMINO'S PIZZA, INC. and<br>DOMINO'S PIZZA, LLC | Case No.: 3:12-cv-0733-DMS-WVG<br><br>**DOMINO'S PIZZA, INC. and DOMINO'S PIZZA, LLC'S RESPONSE TO AMERANTH INC.'S MOTION TO RE-TAX COSTS** |

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION .........................................................................................1

II.     BACKGROUND FACTS.............................................................................2

III.    ARGUMENT ...............................................................................................3

        A.      This Court Should Not Stay the Taxation of Costs................................3

                1.      Ameranth Failed to Meet its Burden to Justify a Stay...............3

                2.      Payment of Taxable Costs Should Not Be Stayed
                        Because Ameranth Failed to Meet the Requirements of
                        Fed. R. Civ. P. 62(d) ...................................................... 6

        B.      Domino's Is Entitled to an Award of Costs for its Production of
                Source Code for Review by Ameranth ...................................7

        C.      Ameranth's Proposed Apportionment of Deposition Costs
                Among Defendants Is Meritless..........................................11

IV.     CONCLUSION............................................................................................14

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Anderson v. Van Pelt, et. al.*, Case No. 09-cv-00704,
 2013 U.S. Dist. LEXIS 31612 (D. Col. March 7, 2013) ...............................12

*Bemo USA Corp. v. Jake's Crane, Rigging & Transport Intern. Inc*.,
 2010 WL 4604496 (D. Nev. Nov. 5, 2010)......................................................7

*Brooktree Corp. v. Advanced Micro Devices, Inc*.,
 757 F. Supp. 1101 (S.D. Cal. 1990) ................................................................6

*California v. Kinder Morgan Energy Partners, L.P*.,
 2014 WL 12577031 (S.D. Cal., Jan. 3, 2014) .................................................7

*CBT Flint Partners, LLC v. Return Path, Inc*.,
 737 F.3d 1320 (Fed. Cir. 2013) .....................................................................10

*City of Alameda v. Nuveen Mun. High Income Opportunity Fund*,
 No. C 08-4575 SI, 2012 WL 177566 (N.D. Cal. Jan. 23, 2012)....................5

*Emblaze Ltd. v. Apple Inc*., Case No. 11-cv-1079,
 2015 WL 1304779 (N.D. Cal., March 20, 2015) ............................................6

*Georgetown Rail Equip. Co. v. Holland L.P.*, Case No. 6:13-CV-366,
 2016 WL 3531301 (E.D. Tex., March 31, 2016) .................................. 10, 11

*Hilton v. Braunskill*,
 481 U.S. 770, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987) ..........................4, 5

*Jardin v. DATAllegro, Inc*., 08-cv-1462-IEG(WVG),
 2011 2011 WL 4835742 (S.D. Cal. Oct. 12, 2011).........................................7

*Jones v. City of Orange Cove*, No. 1:08CV0775 DLB,
 2010 WL 4875681 (E.D. Cal. Nov. 23, 2010) ................................................5

*Kilopass Tech. Inc. v. Sidense Corp*., No. C 10-02066 SI,
 2013 WL 843104 (N.D. Cal. Mar. 6, 2013) ....................................................5

*Marmo v. Tyson Fresh Meats, Inc.,*
 457 F.3d 748 (8th Cir. 2006) ........................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Mformation Techs., Inc. v. Research in Motion Ltd*., No. C-08-4990 EMC,
   2012 WL 6025746 (N.D. Cal. Dec. 4, 2012) ...................................................4

*Olympia Equipment v. Western Union Tele. Co*.,
   786 F.2d 794 (7th Cir. 1986) ...........................................................................6

*Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories Inc*.,
   569 F.3d 1353 (Fed. Cir. 2009) ......................................................................13

*Paoli R.R. Yard PCB Litig*.,
   221 F.3d 449 (3rd Cir. 2000) .........................................................................13

*Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc*.,
   600 F.2d 1189 (5th Cir. 1979) .....................................................................6, 7

*Schroer v. United States*,
   250 F.R.D. 531 (D. Col. 2008) .......................................................................12

*Stanley v. Univ. of S. Cal*.,
   178 F.3d 1069 (9th Cir. 1999) .........................................................................3

*Universal Stabilization Techs., Inc. v. Advanced BioNutrition Corp*.,
   Case No. 17-cv-87-GPC, 2018 WL 6181478 (S.D. Cal., Nov. 27, 2018) ......4

*Vacation Village, Inc. v. Clark Cnty*.,
   497 F.3d 902 (9th Cir. 2007) ...........................................................................6

*Young v. UPS*, Case No. 08-2586,
   2014 U.S. Dist. LEXIS 27118 (D. Md. March 4, 2014) ...............................12

*Zopatti v. Rancho Dorado Homeowners Ass'n,*
   2012 U.S. Dist. LEXIS 3464 (S.D. Cal Jan. 10, 2012) .................................13

**Statutes**

28 U.S.C. § 1920 ............................................................................... 1, 7, 9

**Rules**

Fed. R. Civ. P. 54 ...............................................................................1, 3
Fed. R. Civ. P. 62 ...............................................................................6, 7
Local Civil Rule 54.1 ...................................................................... 1, 3, 7
Patent Local Rule 3 .................................................................................8

# I.   INTRODUCTION

Domino's Pizza, Inc. and Domino's Pizza, LLC ("Domino's") incurred substantial costs defending this case and, as prevailing parties, are entitled to recover these costs from Ameranth, Inc. ("Ameranth").  Pursuant to 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d)(l) and Local Civil Rule 54.1, the Clerk of this Court taxed costs in the amount of $51,632.89. (ECF No. 83.)  Ameranth moved to re-tax costs in the amount of $5,331.55. (ECF No. 84.)

Ameranth first seeks a stay of the taxation of costs, and if the Court declines to do so, a stay in payment of those costs, until after the pending appeal is complete. Ameranth failed to meet its burden to overcome the presumption of "awarding costs to prevailing parties," and Civil Local R. 54.1(g)(5)'s requirement that "costs will be taxed on the date set notwithstanding the fact that an appeal may have been filed." The request for stay should be denied.

Ameranth next asserts that Domino's is not entitled to taxation of valid costs incurred in the necessary production of source code at a secure facility for Ameranth's inspection and copying.  However, Domino's was required to produce the source code in San Diego under secure conditions, selected a 3rd party hosting facility within the provisions of the Protective Order, a facility to which Ameranth agreed and made repeated use to review and gather relevant portions of Domino's source code for this case.  These costs are recoverable.

Finally, Ameranth asserts that Domino's was required to share deposition transcripts with the other defendants and because it did not, it cannot recover costs validly incurred and paid for transcripts ordinarily taxed as costs.   Ameranth's argument is based solely on the false premise that Domino's was required to share deposition transcripts with all the defendants.  Nothing required the defendants to share deposition transcripts between them.  Ameranth's motion to re-tax costs should be denied.

## II.   BACKGROUND FACTS

On February 6, 2013, the Court entered judgment for Domino's, stating: "all asserted claims of the '077 Patent (claims 1, 4-9, 11, 13-18) are patent ineligible under Section 101 as set forth in the Court's Order Granting the Motion for Summary Judgment of Unpatentability (ECF No. 1395 in Lead Case No. 11-cv-1810 DMS-WVG)." (Judgment, ECF No. 66.)

On November 8, 2018, Domino's, as prevailing party, filed its Bill of Costs detailing its entitlement to an award of $76,609.43 in costs and providing support for these costs in the form of a detailed declaration, brief in support and supporting invoices. (ECF No. 72.[1])  On November 20, 2018, Ameranth filed its Opposition to Bill of Costs and requested that the Clerk only tax costs in the amount of $2,770.13. (ECF No. 79.)  It its filing, Ameranth argued that costs were not warranted for certain deposition transcripts because Domino's had not provided the underlying invoices. (*Id*. at 6-7.)  On November 26, 2018, Domino's filed a Supplemental Bill of Costs, the only addition being the inclusion of invoices for the depositions Ameranth identified in its Opposition, which Domino's had inadvertently omitted from its initial filing. (ECF No. 80.)

On November 27, 2018, Clerk Robert Chapman conducted a Hearing on Costs to discuss, item-by-item, Domino's Bill of Costs. (ECF No. 83 at 1.)  Mr. Chapman requested that, by November 30, 2018, Domino's file an additional supplemental Bill of Costs to provide further explanation and support for certain costs. (*Id.* at 2, ll. 4-8.)

On November 30, 2018, Domino's filed its Second Supplemental Bill of Costs providing the additional information sought by Mr. Chapman. (ECF No. 81.) Domino's also withdrew its request for certain costs based on the discussion with Mr. Chapman. (*Id*.)  Domino's amended Bill of Costs requested $75,197.10. (*Id*.)

---

[1] Unless indicated, ECF Nos. refer to Case No. 12-cv-0733.

On that same day, Ameranth objected to both of Domino's Supplemental Bills of Costs as untimely – even though: (1) Mr. Chapman stated during the hearing that the first supplementation was helpful because it provided the missing invoices, and (2) Mr. Chapman requested the second supplementation. (ECF No. 83 at 1-2.) Ameranth states that it continues to object to both of Domino's supplementations to its Bill of Costs, (Brief at 1), but both were clearly valid and accepted by the Clerk.

On December 7, 2018, the Clerk taxed costs in the amount of $51,632.89. (ECF No. 83.)  Ameranth moved to re-tax costs in the amount of $5,331.55.

## III.  ARGUMENT

### A.    This Court Should Not Stay the Taxation of Costs

Ameranth asserts that this Court should stay either the taxation of costs, or if the Court were to tax costs, the payment of those costs by Ameranth, until after the pending appeal is decided.  Ameranth offered little, if any, reasons sufficient to meet its burden to overcome the presumption of "awarding costs to prevailing parties," and Civil Local R. 54.1(g)(5)'s requirement that "costs will be taxed on the date set notwithstanding the fact that an appeal may have been filed."  As such, Ameranth's request for stay should be denied.

#### 1.    Ameranth Failed to Meet its Burden to Justify a Stay

Pursuant to Federal Rule of Civil Procedure 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney fees— should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999). Civil Local. R. 54.1(g)(5) provides that "[e]xcept as otherwise provided by law, costs will be taxed on the date set notwithstanding the fact that an appeal may have been filed."

In assessing whether to issue a stay pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987). In considering these factors, courts have routinely denied requests to stay taxation of costs. *Universal Stabilization Techs., Inc. v. Advanced BioNutrition Corp.*, Case No.: 17-cv-87-GPC, 2018 WL 6181478 at *7-8 (S.D. Cal., November 27, 2018) (considering factors and finding that stay of taxation of costs was not warranted); *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C-08-4990 EMC, 2012 WL 6025746, at *5 (N.D. Cal. Dec. 4, 2012) (finding that none of four *Hilton* factors weighed in favor of staying taxation of costs).

Ameranth does not mention, nor does it attempt to meet, any of the four *Hilton* factors to justify its request for a stay. Ameranth instead requests a stay for the following two reasons: (1) Ameranth could prevail on appeal, and (2) certain costs should be apportioned between defendants, which should be deferred until after the appeal. Neither justifies a stay. As such, Ameranth's request for stay should be denied.

Ameranth first asserts that a stay is warranted because it may prevail on appeal and the "the motion practice and proceedings relative to Domino's BOC will have then been wasted ...". (Brief at 3.) However, that is true of any appeal. Under *Hilton*, Ameranth was required to "ma[ke] a strong showing that [it] is likely to succeed on the merits" of the appeal. Ameranth failed to do so. Moreover, this justification ignores the prejudice to Domino's from the risk that it may be unable to recover the costs if Ameranth loses its appeal. Finally, no efficiency will result from a stay of

costs.  The parties have already fully briefed the cost issues and it will be more efficient for the Court to rule while the record is fresh.

Ameranth next asserts that a stay is warranted because "apportionment of certain costs among the defendants will be appropriate" which "should be deferred until the completion of Ameranth's appeal." (Brief at 3.)  As discussed in Section III.C herein, all the costs sought by Domino's, and taxed by the clerk, were incurred solely by Domino's.  Thus, no apportionment is necessary.

Ameranth's failure to offer evidence on the other *Hilton* factors also favors denial of a stay.  The mere fact that reversal on appeal would also entail reversal or reassessment of costs does not qualify as an irreparable injury and is not a sufficient basis to stay taxation of costs. *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2013 WL 843104, at *5 (N.D. Cal. Mar. 6, 2013) (finding that perceived burden in having to return or reassess costs if judgment was reversed on appeal was "a mere inconvenience, and not an irreparable injury"); *Jones v. City of Orange Cove*, No. 1:08CV0775 DLB, 2010 WL 4875681, at *2 (E.D. Cal. Nov. 23, 2010) (denying request to stay taxation of costs pending appeal because pending appeal "is not a sufficient [] basis to stay taxation of costs"). Where, as here, a party has failed to "show[] that it will be irreparably harmed absent a stay," "there is no basis to defer a decision on the bill of costs pending [] appeal." *City of Alameda v. Nuveen Mun. High Income Opportunity Fund*, No. C 08-4575 SI, 2012 WL 177566, at *2 (N.D. Cal. Jan. 23, 2012).

Ameranth also fails to address the presumptive injury that Domino's would suffer from further delay of taxation of costs. When a party incurs costs successfully defending its intellectual property, it has an interest in swift recovery of those costs. See *Kilopass*, 2013 WL 843104, at *5 (finding that party "had an interest in the immediate payment of its taxable costs" and denying stay of taxation of costs).

Nor has Ameranth demonstrated that the public interest weighs in favor of staying the consideration of costs.  To the contrary, public policy favors prompt recovery of costs. *Emblaze Ltd. v. Apple Inc*., Case No. 11-cv-1079, 2015 WL 1304779 at *9 (N.D. Cal., March 20, 2015).  Because Ameranth failed to satisfy the test for a stay of the taxation of costs pending the outcome of an appeal, Ameranth's request for a stay of the taxation of costs should be denied.

### 2. Payment of Taxable Costs Should Not Be Stayed Because Ameranth Failed to Meet the Requirements of Fed. R. Civ. P. 62(d)

Ameranth also asserts that, should the Court decline to stay "the determination of costs, it should alternatively stay payment and enforcement of the any costs pending the appeal." (Brief at 5.)   However, Ameranth failed to meet the requirements of a stay without bond.

The court's authority to issue a stay of the payment of costs is generally conditioned upon approval of a bond. *Vacation Village, Inc. v. Clark Cnty*., 497 F.3d 902, 913 (9th Cir. 2007) ("Federal Rule of Civil Procedure 62(d) . . . requires only that the appellant post a supersedeas bond in order to obtain a stay on appeal.")

A party is entitled to a waiver of a bond and a discretionary stay in "extraordinary cases." *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189, 1190-91 (5th Cir. 1979). A district court may either waive the bond requirement or allow the judgment debtor to use some alternative type of security. *Brooktree Corp. v. Advanced Micro Devices, Inc*., 757 F. Supp. 1101, 1104 (S.D. Cal. 1990).  Courts have found the waiver of the bond requirement is appropriate under two circumstances: "where defendant's ability to pay is so plain that the cost of the bond would be a waste of money" and "where the requirement would put the defendant's other creditors in undue jeopardy." *Id.* at 1104 (citing *Olympia Equipment v. Western Union Tele. Co*., 786 F.2d 794, 796 (7th Cir. 1986)). The party seeking the waiver bears the burden showing the relief from the bond

requirement is justified. *Jardin v. DATAllegro, Inc*., 08-cv-1462-IEG(WVG), 2011 2011 WL 4835742, at *10 (S.D. Cal. Oct. 12, 2011).

Ameranth made no attempt to justify stay of payment of costs without posting a bond.  Domino's should not have the burden of being Ameranth's creditor.  Indeed, if a stay without bond were granted, Domino's would have no security "against any loss sustained as a result of being forced to forego execution on a judgment during the course of an ineffectual appeal." *Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189, 1190-1191 (5th Cir. 1979).  A waiver of bond will deprive Domino's from the financial protection provided by Rule 62(d) and "unduly endanger" its recovery. *Bemo USA Corp. v. Jake's Crane, Rigging & Transport Intern. Inc*., 2010 WL 4604496, at *1 (D. Nev. Nov. 5, 2010).

Because Ameranth did not meet its burden to justify a stay of the payment of costs without posting a bond and did not seek a stay by supersedeas bond in the alternative, its request for stay should be denied.  *California v. Kinder Morgan Energy Partners, L.P*., 2014 WL 12577031 at *22-23 (S.D. Cal., Jan. 3, 2014) (denying request for stay of costs because plaintiff did not meet the strict requirements for stay without bond and did "not seek a stay by supersedeas bond in the alternative.")

## B.     Domino's Is Entitled to an Award of Costs for its Production of Source Code for Review by Ameranth

The Clerk properly taxed costs pursuant to 28 U.S.C. § 1920(4) and Local R. 54.1(b)(6) relating to Domino's costs associated with the production of source code for review by Ameranth.  The secure production of source code in San Diego was requested by Ameranth and ordered by this Court. (ECF No. 323 in Case No. 11-cv-1310 at §9(c).)  The Iron Mountain escrow was a necessary service for this source code production process given the highly confidential and proprietary nature of Domino's source code.  Ameranth agreed to the use of Iron Mountain and used it

1   repeatedly throughout the case to review Domino's source code.  As such, Domino's

2   is entitled its costs for using Iron Mountain as a secure facility for production of its

3   source code in San Diego.

4       Patent Local Rule 3.4(a) obligated Domino's, as a party opposing a claim of

5   patent infringement, "to produce or make available for inspection and copying . . .

6   source code, specifications, schematics, flow charts, artwork, formulas, or other

7   documentation sufficient to show the operation of any aspects or elements of each

8   Accused Instrumentality identified by [Ameranth] in its Patent L.R. 3.1.c chart."

9   Ameranth defined Domino's "Accused Instrumentality" very broadly, such that it

10  required production of a substantial amount of Domino's source code, including its

11  complete source code for back-end processes, all mobile applications and point-of-

12  sale terminals. (ECF No. 81-1, Cunningham Decl. at ¶20.)  Domino's source code is

13  a substantial, valuable asset of Domino's whose value is derived, in part, from its

14  confidentiality. (*Id.*)  Domino's goes to great efforts to maintain the confidentiality

15  of its source code.  (*Id.*)

16      At the outset of the case, Domino's offered to produce the source code at its

17  office in Michigan.  Ameranth insisted that it be produced in San Diego. (ECF No.

18  99 in Case No. 11-cv-1310 at 6-7.)  The issue was briefed, and this Court ordered

19  that it be produced: "at a San Diego County office of Producing Party's counsel, or

20  another mutually-agreed upon location." (ECF No. 323 in Case No. 11-cv-1310 at

21  §9.)  Domino's, like most of the defendants, contracted with Iron Mountain to store

22  and provide secure access to Ameranth under controlled conditions to view the

23  source code.[2] (ECF No. 81-1, Cunningham Decl. at 20.) Domino's and Ameranth's

---

24

25      [2] Iron Mountain is a company that specializes in the secure storage of
    electronic information, while allowing for ease of access under secure conditions.
26  http://www.ironmountain.com/secure-storage/records-and-media. (ECF No. 81-1_
    at §20.)  While Ameranth indicates that some defendants produced at the office of
27  their local counsel, most chose a secure facility experienced with the escrow and
    production of source code.
28

counsel agreed that Iron Mountain would be appropriate. (*Id*.)  The Protective Order provided a process for source code inspection to insure the confidentiality of the highly proprietary material. (ECF No. 323 in Case No. 11-cv-1310 at 9(c)-(f).) Ameranth would contact Domino's counsel when it needed access to review the information at Iron Mountain and Ameranth would be allowed access. (*Id*.) Ameranth's experts reviewed the information on the laptops numerous times over the seven years the case was pending. (ECF No. 81-1, Cunningham Decl. at 20.)

These costs are clearly recoverable under 28 U.S.C. § 1920(4).   Domino's was required to produce the source code in San Diego under secure conditions, selected a 3rd party hosting facility within the provisions of the Protective Order, a facility to which Ameranth agreed and made repeated use to review and gather relevant portions of Domino's source code for this case.

Ameranth asserts that Domino's used Iron Mountain for its "*Domino's and it's counsel's* own convenience." (Brief at 7) (emphasis in original.)  That is false. Both Domino's and its counsel are located in Michigan and Domino's offered to make the source code available for inspection there.  However, Ameranth refused, moved the Court for a San Diego production, which the Court ordered. (See ECF Nos. 99 and 323, in Case No. 11-cv-1310 at §9.)  Thus, a secure facility like Iron Mountain was necessary.

Ameranth next asserts, without evidence, that the Iron Mountain fees are "exorbitant" for which only "large companies like Domino's have the resources," to suggest that it would never utilize Iron Mountain and that it should have been put on notice that Domino's would seek recovery for these costs.  However, ***Ameranth itself has used Iron Mountain for source code escrow***. (See ECF No. 1043-7 in Case No. 11-cv-1310, Ameranth e-Host Agreement at §10.1.)  Moreover, as the Clerk stated: "the Local Rule does not state that a prevailing party must obtain a

stipulation from opposing counsel for each invoiced amount as it is incurred in the course of litigation." (ECF No. 83 at 8.)

Other courts have taxed costs associated with the production of source code for review at a secure facility.  See *CBT Flint Partners, LLC v. Return Path, Inc*., 737 F.3d 1320 (Fed. Cir. 2013); *Georgetown Rail Equip. Co. v. Holland L.P.*, Case No. 6:13-CV-366, 2016 WL 3531301 (E.D. Tex., March 31, 2016).  Ameranth's attempt to distinguish these cases is without merit.

Ameranth asserts that in *CBT Flint Partners*, the Federal Circuit did not "award fees such as the Iron Mountain facility fees sought by Domino's." (Brief at 8.)  However, in discussing and awarding costs for other, similar procedures involved in the secure production of confidential source code for review on a computer, it stated: "[c]overed costs include the costs incurred in providing a secured computer for the time the requester is entitled to access to it ..." *CBT Flint Partners*, 737 F.3d at 1332-1333.  This clearly covers the costs for which Domino's seeks reimbursement.

Ameranth asserts that in *Georgetown Rail*, "a significant factor in the Court's decision was that the party opposing costs had "agreed to the Protective Order that specifies the safeguards concerning the production of source code" and that, in contrast, the Protective Order in the case at bar "does not require the production of source code at Iron Mountain or any other similar costly facility." (Brief at 8, quoting *Georgetown Rail*, 2016 WL 3531301. at *2.)  Ameranth misrepresents *Georgetown Rail*.  The Protective Order in *Georgetown Rail* did not, as Ameranth suggests, require production at Iron Mountain, but instead, just as in this case, at counsel's office or a mutually agreed location.  (Ex. A, *Georgetown Rail* Prot. Order at 10(b).)  Indeed, the Protective Orders for both cases on this issue are nearly identical.

### *Ameranth v. Domino's*

Source Code will be produced and made available for inspection and analysis at a San Diego County **office of Producing Party's counsel, or another mutually-agreed upon location**.

(ECF No. 323 in Case No. 11-cv-1310 at 9(c).)

### *Georgetown Rail*

Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) ... the stand-alone computer(s) may only be located at the **offices of the producing Party's outside counsel or at a mutually agreed location**.

(Ex. A at 10(b).)

Like the court in *Georgetown Rail*, the Clerk properly here properly taxed the Iron Mountain costs.

As such, Domino's is entitled its costs for using Iron Mountain as a secure facility for production of its source code in San Diego. Ameranth's motion to re-tax these costs should be denied.

## C.   Ameranth's Proposed Apportionment of Deposition Costs Among Defendants Is Meritless

Although Domino's out-of-pocket costs for deposition transcripts is more than $22,000, Ameranth amazing asserts that this Court should tax costs in the amount of $678.98. Ameranth's argument is entirely premised on the assertion that the 33 defendants were somehow required to share deposition transcripts and costs incurred by Domino's should be split 33 ways. This premise is false. Nothing required the defendants to share deposition transcripts between them. Moreover, it would deprive court reporters of income to which they are entitled.

Ameranth's assertion that the deposition transcripts should have been "shared between Defendants" is false. (Brief at 10.) To the contrary, as one court stated:

The general rule, established expressly by the Federal Rules of Civil Procedure, is that a party must obtain copies of deposition transcripts

directly from the court reporter upon the payment of a reasonable charge, and not from opposing counsel or the court.

*Schroer v. United States*, 250 F.R.D. 531, 537 (D. Col. 2008).

*Anderson v. Van Pelt, et. al.* is directly on point. Case No. 09-cv-00704, 2013 U.S. Dist. LEXIS 31612 (D. Col. March 7, 2013). In *Anderson*, three defendants sought, and were awarded, costs for deposition transcripts. *Id.* Like Ameranth, the plaintiff sought to re-tax costs, arguing that the defendants could have purchased a single copy and shared it between them. The Court disagreed:

> Plaintiffs ... suggest that Defendants should have mitigated their costs by making copies of each other's transcripts. Defendants, however, are not somehow obligated to pool their resources in order to minimize costs that are otherwise necessary.

*Id.* at 25.

Similarly, in *Young v. UPS*, Case No. 08-2586, 2014 U.S. Dist. LEXIS 27118 *6-8 (D. Md. March 4, 2014), the defendant sought to tax costs for 15 deposition transcripts. The plaintiff sought to reduce this cost in half because it offered, and defendant could have, shared the transcripts costs. The Court disagreed.

> There is no inherent injustice in Defendant's decision not to share deposition transcripts with Plaintiff - to the contrary, **it is the norm that both parties pay the costs associated with deposition transcripts they believe to be "reasonably necessary" to prove their case**. Indeed, "[t]he general rule, established expressly by the Federal Rules of Civil Procedure, is that **a party must obtain copies of deposition transcripts directly from the court reporter upon the payment of a reasonable charge, and not from opposing counsel or the court**."

*Id.* at 8.

Just as in *Anderson*, *Young and Schroer*, the defendants were not obligated to share deposition transcripts with each other. As such, apportionment among the 33 defendants is improper.[3]

---

[3] Ameranth's apportionment argument is also flawed because it assumes all the defendants attended or requested transcripts for every deposition. That was not

The cases cited by Ameranth it contends support apportionment are inapposite. These cases concern apportioning a *prevailing party's costs among multiple losing parties* – not apportioning costs a *prevailing party's costs between other prevailing parties*. None of those cases addressed the issue here, whether consolidated parties are required to share deposition transcripts such that, if they do not, the costs of a single transcript will be apportioned between them should they prevail.

The common issue in Ameranth's caselaw is whether costs should be split equally among losing parties or whether liability for costs should be joint and severable.[4] In *Paoli R.R. Yard PCB Litig*., 221 F.3d 449, 469 (3rd Cir. 2000), defendants prevailed and sought costs from 19 plaintiffs, three who had since died. Plaintiffs asserted, and the court agreed, that costs should be apportioned evenly between all defendants, rather than joint and severally. In *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 764 (8th Cir. 2006), thirteen plaintiffs were all represented by same counsel. Plaintiff Marmo prevailed and sought costs. *Id.* The court ruled it would not allow Marmo to collect costs incurred by other prevailing plaintiffs, so it apportioned these costs among them. *Id.* In *Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories Inc*., 569 F.3d 1353, 1358 (Fed. Cir. 2009), Daiichi sued Teva and Mylan in consolidated case and Teva then settled. *Id.* Daiichi prevailed against Mylan and sought all its costs. The Court only awarded half, finding Teva's share was included in settlement agreement. *Id.*

---

the case. Indeed, of the 35 depositions, seven (7) (taken of Domino's employees and expert) were attended solely by Domino's and another eleven (11) were attended solely by the Pizza defendants.

  [4] Ameranth also cites *Zopatti v. Rancho Dorado Homeowners Ass'n,* 2012 U.S. Dist. LEXIS 3464 (S.D. Cal Jan. 10, 2012), but it irrelevant. In *Zopatti*, the plaintiff took a deposition, paid for the transcripts and sent the original to defendant. Defendant had ordered its own, prevailed and sought costs for the transcript it ordered. The court declined to award costs for the transcript because defendant had already been given a copy prior to ordering.

Because there is no requirement that defendants share deposition transcripts, Domino's is entitled to taxation of all the transcripts costs taxed by the Clerk. Ameranth's motion to re-tax should be denied.

## IV.  CONCLUSION

As detailed above, Domino's respectfully requests that the Court deny Ameranth's motion for a stay, and/or to re-tax costs.

Dated:  January 25, 2019                    Respectfully submitted,

By:  /s/ Thomas W. Cunningham
    Frank A. Angileri (*Pro Hac Vice*)
    fangileri@brookskushman.com
    Thomas W. Cunningham (*Pro Hac Vice*)
    tcunningham@brookskushman.com
    BROOKS KUSHMAN P.C.
    1000 Town Center, Twenty-Second Floor
    Southfield, MI  48075-1238
    Telephone: (248) 358-4400
    Facsimile:  (248) 358-3351

    William E. Thomson, Jr. (SBN 47195)
    wthomson@brookskushman.com
    BROOKS KUSHMAN P.C.
    601 S. Figueroa St., Suite 2080
    Los Angeles, CA  90017-5726
    Telephone (213) 622-3003
    Facsimile: (213) 622-3053

    *Attorneys* for *Defendants DOMINO'S PIZZA, LLC and DOMINO'S PIZZA, INC.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served on January 25, 2019, with a copy of this document via the Court's CM/ECF system per Local Rules.  Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or first class mail on this date.

By: <u>/s/ Thomas W. Cunningham</u>
Thomas W. Cunningham