William E. Thomson, Jr. (SBN 47195)
wthomson@brookskushman.com
BROOKS KUSHMAN P.C.
601 S. Figueroa St., Suite 2080
Los Angeles, CA 90017-5726
Telephone (213) 622-3003
Facsimile: (213) 622-3053

Frank A. Angileri (*Pro Hac Vice*)
fangileri@brookskushman.com
Thomas W. Cunningham (*Pro Hac Vice*)
tcunningham@brookskushman.com
1000 Town Center, Twenty-Second Floor
Southfield, MI 48075-1238
Telephone: (248) 358-4400
Facsimile: (248) 358-3351

Attorneys for Defendants
DOMINO'S PIZZA, LLC and DOMINO'S PIZZA, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| AMERANTH, INC.<br><br>v.<br><br>DOMINO'S PIZZA, INC. and<br>DOMINO'S PIZZA, LLC | Lead Case No.: 3:12-cv-0733-DMS-WVG<br><br>**DOMINO'S PIZZA, LLC AND DOMINO'S PIZZA, INC. SECOND RENEWED MOTION TO DECLARE CASE EXCEPTIONAL AND AWARD ATTORNEY FEES AND NON-TAXABLE COSTS**<br><br>Judge:    Hon. Dana M. Sabraw<br>Date:     December 11, 2020<br>Time:    1:30 p.m.<br>Location: Courtroom 13A |

1

## **TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ................................................................................ iii

3    I.    INTRODUCTION ........................................................................... 1

4    II.    BACKGROUND FACTS ............................................................... 3

5            A.    Procedural History ............................................................... 3

6            B.    Ameranth's Baseless and Inconsistent Infringement/Validity
7                    Claims for the '077 Patent .................................................. 4

8                   1.    Inconsistent and Baseless Positions on Synchronization .......... 4

9                   2.    Inconsistent and Baseless Positions on the PHMC/PHC .......... 6

10                   3.    Ameranth's Inconsistencies Regarding the "Scrolling"
                        Requirement ................................................................. 8

11                   4.    Ameranth's Failure of Proof of a Different Number of
12                         Screens and Its Repeated Attempts to Mislead the Court ........ 9

13            C.    Ameranth's False and Misleading Testimony and Evidence
                   Spoliation......................................................................12

14                   1.    The TransPad Misrepresentations ......................................... 12

15                   2.    Ameranth's Repeated Misrepresentations that Its
16                         Products Practiced the Claimed Inventions and Spoliation
                        of Evidence to Hide the Truth ............................................ 13

17            D.    Ameranth's Continued Vexatious Litigation ....................................17

18    III.    LEGAL STANDARD..................................................................17

19    IV.    ARGUMENT ................................................................................18

20            A.    Domino's is the Prevailing Party.........................................18

21            B.    This Case Is Exceptional Under *Octane Fitness* ................................19

22                   1.    Ameranth Bringing a Baseless Case Renders this Case
23                         Exceptional ................................................................. 19

24                   2.    Ameranth's Shifting Positions Render This Case
                        Exceptional ................................................................. 22

25                   3.    Ameranth's Misleading This Court Renders Case
26                         Exceptional ................................................................. 23

27            C.    Domino's Is Entitled to Fees and Costs for the CBMs and
                   Appeals.......................................................................24

28

D.     The Amount of Fees and Costs to be Awarded to Domino's Should Be Determined Following the Exceptional Case Determination ..................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Alice Corp. v. CLS Bank Int'l.*,
134 S.Ct. 2347 (2014)...........................................................20, 21

*Ameranth v. Olo, Inc.*,
No. 20-cv-518 (D. Del. Oct. 13, 2020)................................17, 21

*Andersen Mfg. v. Wyers Prods. Grp., Inc.*,
No. 18-cv-0235-WJM-STV; 2019 U.S. Dist. LEXIS 143730
(D. Colo., August 23, 2019).......................................................23

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016)................................. 17, 18, 20, 21

*Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.*,
393 F.3d 1378 (2005)............................................................... 1

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs.*,
394 F.3d 1348 (Fed. Cir. 2005)...................................................18

*Cellspin Soft v. Fitbit, Inc.*,
No. 4:17-CV-5928-YGR, 2018 U.S. Dist. LEXIS 112873, at *8
(N.D. Cal. July 6, 2018)............................................................19

*Central Soya Co. v. Geo. A. Hormel & Co.*,
723 F.2d 1573 (Fed. Cir. 1983).................................................24

*Deep Sky Software v. Southwest Airlines Co.*,
Case No. 10-cv-1234-CAB (KSC), 2015 U.S. Dist. LEXIS 178030,
at *5-7 (S.D. Cal. Aug. 19, 2015).........................................19, 25

*Digital Reg of Tex., LLC v. Adobe Sys.*,
No. C 12-1971 CW, 2015 U.S. Dist. LEXIS 29328, at *14
(N.D. Cal. Mar. 9, 2015)............................................................23

*Drop Stop LLC v. Zhu*,
757 Fed. Appx. 994 at *11 (Fed. Cir. 2019)...............................24

*ECT, LLC v. Shopperschoice.com, LLC*,
No. 16-cv-81667 at *8 (S.D. Fla. Oct. 30, 2020)........................20

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) ...................................................18

*In re Personalweb Techs., LLC*,
    2020 U.S. Dist. LEXIS 186226 at *40-47 and *74-75
    (N.D. Cal Nov. 6, 2020) ...........................................................23

*Intellect Wireless, Inc. v. Sharp Corp.*,
    45 F.Supp.3d 839 (N.D. Ill. 2014) ............................................23

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017) .................................................20

*Kilopass Tech. Inc. v. Sidense Corp.*,
    No. C 10-02066 SI, slip op. at 17 (N.D. Cal. Aug. 12, 2014) ......................22

*Monolithic Power Sys. v. O2 Micro Int'l Ltd.*,
    726 F.3d 1359 (Fed. Cir. 2013) .................................................23

*Octane Fitness, LLC, v. Icon Health & Fitness, Inc.*,
    134 S.Ct. 1749 (2014) ........................................... 1, 2, 17, 18, 19, 24

*Oplus Techs., Ltd. v. Vizio, Inc.*,
    782 F.3d 1371, 1373-76 (Fed. Cir. 2015) ...................................22

*PPG Indus. v. Celanese Polymer Specialties Co.*,
    840 F.2d 1565 (Fed. Cir. 1988) .................................................25

*Straight Path IP Grp, Inc. v. Cisco Systems, Inc.*,
    2019 U.S. Dist. LEXIS 202541 at *1031-1035, (N.D. Cal. Nov. 20, 2019).22

**Statutes**

35 U.S.C. § 101 ......................................................... 17, 18, 20, 21
35 U.S.C. § 102 ............................................................................. 3
35 U.S.C. § 103 ............................................................................. 3
35 U.S.C. § 285 ................................................... 1, 2, 17, 18, 23, 24

**Rules**

Fed. R Civ. P. 12(b)(6)..............................................................17
Fed. R. Civ. P. 54(d)(2)(C) ...................................................2, 25

# I.   INTRODUCTION

On September 25, 2018, this Court granted summary judgment in favor of Defendants Domino's Pizza Inc. and Domino's Pizza, LLC ("Domino's"), finding Plaintiff Ameranth Inc.'s ("Ameranth") asserted claims invalid for lack of patentable subject matter.  The Federal Circuit affirmed on November 1, 2019. (ECF No. 1325[1].) Subsequent petitions for rehearing, rehearing *en banc* and for certiorari to the Supreme Court were all denied. (ECF No. 1486.)  As prevailing party, Domino's seeks attorney fees under the patent statute for an "exceptional case." *See* 35 U.S.C. § 285.  Domino's initially sought fees in a motion filed immediately after judgment was entered, but prior to Ameranth's appeal. (Case No. 12-cv-0733, ECF No. 076.)  This Court denied that motion without prejudice to re-file it after the appeal was decided. (*Id.* at ECF No. 099.)  Domino's renewed its motion, but the case was stayed pending the petition for certiorari.  Now that all Ameranth appeals are exhausted, Domino's again moves for fees.

In 2014, the Supreme Court lowered the standard for an "exceptional case." *Octane Fitness, LLC, v. Icon Health & Fitness, Inc.*, 134 S.Ct. 1749, 1752 (2014). Before *Octane Fitness*, a "case [was] deemed exceptional under § 285 only in two limited circumstances: 'when there [had] been some material inappropriate conduct,' or when the litigation [was] both 'brought in subjective bad faith' and 'objectively baseless.'" *Octane Fitness*, 134 S.Ct. at 1752 (quoting *Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.*, 393 F.3d 1378, 1381 (2005)).  In *Octane Fitness*, the Supreme Court found this standard too stringent and held that a movant need only show, by a ***preponderance of the evidence***, the case is one "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the

---

[1] Unless a different case number is specifically identified, any reference to an ECF No. refers to the consolidated Case No. 11-cv-1810.

governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1756.

This case "stands out from others" both because it was meritless from the outset and because of the manner in which Ameranth litigated.  Ameranth asserted four patents against Domino's: U.S. Patent Nos. 6,384,850 ("the '850 patent"), U.S. Patent No. 6,871,325 ("the '325 patent"), U.S. Patent No. 6,982,733 ("the '733 patent") and U.S. Patent No. 8,146,077 ("the '077 patent").  Ameranth knew from the outset that it could claim infringement against Domino's only by asserting the patents so broadly that all were rendered invalid.[2]  In an effort to get around invalidity, Ameranth continually shifted litigation positions, taking positions on invalidity that were directly contrary to its positions when asserting infringement – conduct which continued through the most recent Federal Circuit appeal.  Along the way, Ameranth also spoliated evidence and presented misleading and false sworn testimony.  Ameranth did so in pursuit of damages demand that likely would have exceeded $50 million at trial. (12-cv-0733, ECF No. 104-1, Cunningham Decl., ¶14.)

As a result, Ameranth vexatiously multiplied these proceedings, causing Domino's to incur significant expense.  As such, this case "stands out from others with respect to the substantive strength of a party's litigating position" and "the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S.Ct. 1756.  Because this case is "exceptional" under 35 U.S.C. § 285, Domino's requests that this Court award Domino's its attorneys' fees and non-taxable costs for the litigation, including the parallel Patent Office proceedings and Federal Circuit appeals.  Under Fed. R. Civ. P. 54(d)(2)(C), Domino's requests that the Court first rule that this case is exceptional and warrants an award of attorneys' fees and non-

---

[2] Indeed, prior to Ameranth bringing suit against Domino's, a jury had already found substantially similar broadly asserted claims of the same '850, '325 and '733 patents invalid in the *Ameranth v. Menusoft* case.  Case No. 07-cv-0271 (ED Tex.).

taxable costs, and later receive a detailed submission including invoices to prove the amount of the award at a later date.

## II.   BACKGROUND FACTS

### A.   Procedural History

In 2007, Ameranth sued Menusoft, Inc. (Menusoft") for infringement of various claims of the '850, '325 and '733 patents. (ECF No. 1, Case No. 2:07-cv-0271 (ED Tex.)  On September 20, 2010, the jury found Menusoft did not infringe and that the asserted claims were invalid both as anticipated under 35 U.S.C. § 102 and as obvious under 35 U.S.C. § 103. (Ex. 1,[3] Menusoft Verdict.)

On or about August 2011, Ameranth sued Domino's and many others in this Court asserting infringement of the '850 and '325 patents.  On March 27, 2012, Ameranth brought another suit accusing Domino's and many others of infringing the '077 patent.  On July 1, 2013, Ameranth brought a third suit accusing Domino's and many others of infringing the '733 patent.

The three Domino's cases were consolidated in a Third Amended Complaint on September 20, 2013. (12-cv-0733, ECF No. 56.)  This case was then consolidated for claim construction and discovery with cases against dozens of other defendants.

On November 15, 2013, Ameranth, after reviewing Domino's source code, served infringement contentions. (Ex. 2, 11/15/13 Infringement Contentions.)  As Ameranth had done in previous contentions, it identified its 21st Century Restaurant ("21CR") as practicing all the patents, the Improv Comedy Club Ticketing and eHost systems as practicing the '850, '325 and '077 patents, and HostAlert and Magellan systems as practicing the '850 and '077 patents.  (*Id*. at 4.)

---

[3] With the exception of new Exhibits 14 and 15 (filed with the current motion), all other references to Exhibits 1-13 are directed to the Exhibits filed in 12-cv-0733 as ECF Nos. 104-2 through 104-14, respectively.

In 2014 and 2015, some defendants, including Domino's, filed Covered Business Method review petitions (CBMs) with the Patent, Trial and Appeal Board ("PTAB"), seeking a finding that the asserted claims were not patentable.  As a result of the PTAB rulings in the CBMs, and subsequent appeals to the Federal Circuit, all asserted claims of the '850 and '325 patents were found not patentable. (12-cv-0733, ECF No. 66.)

Ameranth then served amended infringement contentions in March 2017, and again in July 2017, which addressed only the '077 patent. (Exs. 3 and 4, March and July 2017 Contentions.)  Ameranth again identified its 21CR, Improv Comedy Club Ticketing, eHost, HostAlert and Magellan systems as all practicing the patent.  (Ex. 3 at 4-5; Ex. 4 at 4-5.)

**B.   Ameranth's Baseless and Inconsistent Infringement/Validity Claims for the '077 Patent**

Throughout this case, Ameranth repeatedly took one position to salvage the patent's validity and a completely diametric position on the same issue to maintain its infringement claim.  Indeed, Ameranth retained different experts for invalidity (Dr. Shamos) and infringement (Dr. Malek) and provided them with different information.  The invalidity expert, Dr. Shamos, repeatedly relied on the prosecution and CBM histories to limit claim scope. (ECF No. 1117-24, Shamos Dep. Tr. at 19:14-17.)  In contrast, Dr. Malek, when rendering infringement opinions, never reviewed the prosecution or CBM histories to determine if any claim scope had been surrendered. (ECF No. 1117-23, Malek Tr. at 35:15-18; 44:20-45:06.)

**1.   Inconsistent and Baseless Positions on Synchronization**

Ameranth baselessly asserted that Domino's system was a "synchronous" system.  All the '077 patent claims are directed to a "real time synchronous communications system."  It was clear to Ameranth prior to filing suit that Domino's system could not be synchronous, or infringe any claim, because the online menu for

each store varies – they are not consistent.  Thus, those ordering from handheld devices from different stores see different – not synchronous – menus.

This Court construed synchronous/synchronized to mean: "made, or configured to make, consistent." (ECF No. 908 at 5.)  Thus, in a synchronous system, the menu data must be consistent.  Indeed, in the *IPDEV* action, ***when the validity of its patent was at issue***, Ameranth stated: "[t]he systemic synchronization aspect appears in every patent claim ..." (ECF No. 1313 at 10.)  It then explained synchronization to this Court:

> "[S]ynchronization . . . means that the information in the master menu has to be substantively the same as all of the menu items, modifiers, submodifiers [and] categories that appear in the programmed handheld menu configuration."

(ECF No. 1109-10, IPDEV Hrg. Tr. at 8.)

> So every entree that is in the master menu, every modifier -- you know, cook the beef rare -- every side dish -- give me scalloped potatoes -- also has to appear on the programmed handheld. That is the synchronization.

(*Id.* at 9.)

> "[I]f you make a change, if you update a menu item, if you remove one, if you add one, it gets promulgated throughout the entire system.

(*Id.* at 13.)

In contrast, ***when infringement was the issue***, Ameranth changed course and took a directly contrary position on synchronization:

> The claims do not require that all master menu content must be synchronized in its entirety to the handheld devices.

ECF No. 1185, Ameranth Opp. to MSJ at 15, ll. 22-23.

> Critically, the claims do not require that all system menu data must be synchronized with all connected devices.  The claims *do not* require that there must be 'overall consistency' in the way Domino's incorrectly defines it.

*Id.* at 7, ll. 20-22.

Domino's ordering system supports over 5000 stores by providing both online and mobile ordering. (ECF No. 1109-1 at 9.)  Domino's system is not synchronous because each store's menu is different – *i.e.*, they are not "consistent."  (*Id.* at 9-10.)  Indeed, Domino's intentionally makes menu content non-synchronous by allowing each store to have its own online menu. (*Id.*)  Thus, Ameranth's infringement claim against Domino's was baseless from the start.  The Court need not find that Domino's does not infringe, although it clearly could not; the point is merely that Ameranth took radically inconsistent positions to maintain its case.

## 2.   Inconsistent and Baseless Positions on the PHMC/PHC

Ameranth took similar inconsistent, baseless positions regarding the requirements of the claimed "programmable handheld [menu] configuration" ("PHMC/PHC").  All the '077 claims require a PHMC/PHC formatted for display as cascaded sets of linked graphical user interface ("GUI") screens for two different wireless handheld display sizes. (ECF No. 1109-5 at cols. 15-20.)  The claims also require, on their face, that all the formatting for display of the screens occur *prior to* transmission of the PHMC/PHC to the handheld device. (*Id.*)  This Court confirmed this when it ruled that the PHMC/PHC must be "generated and formatted *outside the handheld devices*."  (ECF No. 908, 12/28/2017 CC Order at 13.)[4]  A PHMC/PHC can be "generated and formatted [for display] outside the handheld device[s]" only if it contains information about the device display size.

Yet, *when infringement was the issue*, Ameranth asserted Domino's infringed even though all display formatting occurs *on, rather than outside, the handheld device*.  Ameranth asserted the PHMC/PHC need only be a text file with hierarchical

---

[4] Domino's JSON files (the purported PHMC/PHC) are public and can be captured and reviewed, as Ameranth's experts did.  (ECF No. 1185-1 at ¶¶9-11.)  Thus, prior to filing suit, Ameranth clearly knew or should have known that Domino's did not meet the PHMC/PHC limitations.

menu data and need not have any information about the display sizes of the handheld devices:

> **Domino's Motion incorrectly argues that the PHMC/PHC must contain information about the handheld device** ...

(ECF No. 1185, Ameranth Inf. Opp. at 9)(emphasis added.)

> Ameranth's expert, Dr. Malek admits that the JSON menu files do not include any "knowledge of the device characteristics."

(ECF No. 1109-15 at 136:10-137:03.)

> Dr. Malek admits that the "JSON file can be displayed in many ways," such as "radio buttons," "a text file; as just one screen; as, you know, multiple screens; a cascaded set of screens."

(ECF No. 1109-15, Malek Tr. at 136:10-13.) [5]

However, **when invalidity was at issue**, and to avoid a finding that the claim was invalid as not novel, or abstract, Ameranth took the directly contrary position that the claims require that the PHMC/PHC have significant, detailed display formatting requirements, including information about the display size of the handheld device:

> [there are] very detailed display requirements for . . . the PHMC

(ECF No. 1167-1, PgID68040; Pl. Opp. to Pizza Hut's §101 MSJ at 11.)

> programmed handheld [menu] configuration defined based on a particular **type of handheld client device** as recited in the '077 claims.

(*Id*. at PgID68042)(emphasis in original); *see also*, ECF No. 1313 at PgID 77471; Ameranth Suppl. Opp. to Domino's §101 MSJ at 14.)

> Q. ... [For] claim 1, in order to perform the ... limitation of automatically formatting the [PHMC] for display as cascaded sets of linked [GUI] screens appropriate for ... two different wireless ... device display sizes, the PHMC has to have some sort of information in advance about the size of the screens of those respective devices?

---

[5] This is detailed in Domino's Motion for Summary Judgment of Non-infringement (ECF No. 1109), incorporated here by reference.

A. Yes, I think I agree with that. It has to have information about the sizes. It may or may not actually have to have the sizes, but it has to have information about them; otherwise, it wouldn't know what to do differently.

(ECF No. 1109-19, Shamos 10/25/17 dep. at 190:16-191:23.)

On appeal to the Federal Circuit, Ameranth continued to assert these detailed PHMC/PHC requirements in an attempt to preserve the patent's validity, arguing that "[T]he handheld menu configuration is generated from the master menu even though the display configurations are different and *with the menu configuration taking into account the known size of the handheld display into its configurations*." (Ex. 11, Ameranth Opening Brief at 13.)

Ameranth's directly contrary positions concerning the PHMC/PHC requirement again objectively demonstrate the baselessness of its case.

### 3.    Ameranth's Inconsistencies Regarding the "Scrolling" Requirement

Ameranth has also repeatedly flip-flopped on the issue of whether the claims require eliminating scrolling of information on the handheld device – depending on whether it was arguing for validity, or alleged infringement.

To obtain the '077 patent, Ameranth asserted to the PTO that the invention produced a customized display layout eliminating the need for scrolling. Distinguishing prior art systems that permitted scrolling, Ameranth stated: "[the prior art] always yielded an output *requiring scrolling* and which was not customized to that display." (ECF No. 870-1 at 35.)  It further stated: "a POSA would have known that *scrolling would not have been acceptable* in a hospitality/restaurant POS system to display and access menus."  (*See id*. at 31.) (emphasis added.)

However, Ameranth took the opposite position in opposing a claim construction of "customized display layout" that introduced a "no scrolling" requirement, arguing: *"[t]here is nothing in the claims about 'scrolling' or any preclusion of 'scrolling.'"*

(ECF No. 865, Ameranth Opening CC Brief at 25) (emphasis added.) This Court declined to include any no scrolling requirement in the claims. (ECF No. 908, 12/28/2017 Order Construing Claims at 9.)  Thus, Ameranth successfully argued in Court that the purported no scrolling improvement was not captured by the claims.

Yet, on appeal at the Federal Circuit, Ameranth again reversed course in an attempt to save the validity of its patent.  After telling *this* Court that there was ***nothing*** in the claims about ***any preclusion of scrolling***, Ameranth amazingly told the Federal Circuit that the claims were not abstract because "its inventions eliminate the need for scrolling in the display of small screen devices." (Ex. 1 to ECF No. 1475, Appeal Opinion at 14, fn. 3; *see also* Ex. 11, Ameranth Opening Brief at 23 ("eliminates the amount of user scrolling.")  Although the Federal Circuit rebuffed Ameranth's argument, finding "[t]his [scrolling] feature is not claimed" (Ex. 1 to ECF No. 1475, Appeal Opinion at 14, fn. 3), Domino's was forced to expend substantial time and money addressing Ameranth's shifting arguments.

### 4.    Ameranth's Failure of Proof of a Different Number of Screens and Its Repeated Attempts to Mislead the Court

In its Infringement Contentions, Ameranth contended that Domino's met the "different number of screens" claim limitations but did not explain its method for counting screens; nor did it provide any screen counts to support its claim of infringement.  (*See generally*, Exs. 3 and 4.)

Similarly, in Dr. Malek's expert report on infringement, he also failed to provide any screen counts, and thus, did not support infringement. (*See generally*, ECF No. 1117-22.)   Domino's then moved for summary judgment of non-infringement, asserting among other things that Ameranth did not prove the number of screens limitation. (ECF No. 1109 at 23-25.)  Domino's asserted that Dr. Malek's opinion provided no evidence that Domino's met the "different number of screens" limitations because failed to provide any evidence of screen counts. (*Id.*)

1

Realizing its evidence on the "different number of screens" limitation was deficient, Ameranth offered new declarations from Dr. Malek and a new expert, Mr. Cardinal, in its summary judgment response. (ECF No. 1185-1,1185-2.)[6]  These new declarations discuss new screen count videos and new evidence created by Mr. Cardinal and Dr. Malek. (*Id.*)  Mr. Cardinal used two videos, on which Dr. Malek purportedly relied in his expert report to count screens, that show pizza orders made from Domino's apps on two phones: an iPhone 4s and a Galaxy S7, with graphically added screen counts. (ECF No. 1185-1.)  Dr. Malek's new declaration states: "*while following the same ordering sequence in the Domino's mobile app ...* the 2017 screen capture videos yields [*sic*] a count of 15 UIs[7] on the iPhone 4s and 16 UIs on the Galaxy S7 Edge." (ECF No. at 1185-2 at ¶45.)  (emphasis added.)

But, as detailed in Domino's Mot. to Strike the Decls. of Malek, Shamos, and Cardinal (ECF No. 1217-1 at pp. 3-8), incorporated here by reference, this single UI screen difference was the sole result of Ameranth ***not*** "follow[ing] the same ordering sequence."  The videos recorded one transaction by a ***new*** customer, and one by an ***existing*** customer, -- yet ***existing*** customers are presented with one additional, "prior order" screen – which explains the extra screen.  (ECF No. 1214-1 at ¶¶8-12.)  Ameranth thus mislead the Court by submitting screen count evidence utilizing "non-comparable" orders to prove different screen counts -- that did not exist.

When one uses Dr. Malek's counting method to compare the screen counts from the orders in the videos Dr. Malek actually submitted in his expert report, ***they are identical*** (both have 16 screens) because both were made from the same ***existing*** customer account that had an order history.  (ECF No. 1217-1 at 5.)

_____

[6] Domino's moved to strike these declarations as untimely, prejudicial expert testimony not previously disclosed pursuant to case deadlines.
[7] "UIs" mean graphical user interface screens.

Significantly, in Ameranth's response brief to Dominos Motion to Strike the new Malek and Cardinal declarations, ***Ameranth did not challenge, contest, or even address, any of these assertions regarding Ameranth's improper conduct for the new screen count videos***. (*See generally*, ECF No. 1228).

Amazingly, when confronted with the above facts in Domino's Mot. for Exceptional Case filed prior to the appeal (12-cv-0733 at ECF No. 76), Ameranth presented additional misleading evidence and argument.  Ameranth asserted that all the misleading evidence and argument of screen counts offered to this Court on summary judgment was irrelevant because it had other, different Domino's app screenshots from 2013 that Ameranth asserted proved a difference in screen numbers on different sized display screens.  (12-cv-0733 at ECF No. 085 at 9-10.)  ***But these 2013 orders are also not comparable orders***. (Cunningham Decl. at ¶¶20-21.)  In the iPhone 5 (IP5) order, a large pizza with pepperoni and pineapple was selected and ordered. (*Id*.)  In the Samsung Galaxy S3 order, that same pizza is selected, but in addition, there is a screen showing that an additional small pizza with no toppings was also selected. (*Id*.)  Thus, the screen counts are different. Ameranth again attempted to misrepresent evidence to this Court in an attempt to cover previous misrepresentations.  This is strong evidence of an intent to deceive this Court.

Further evidencing its intent, Ameranth attempted a similar scheme in the QuickOrder/Pizza Hut case.  There, the iPhone 4S and Galaxy 7 screen flows were identical, yielding identical screen counts, and thus, did not support infringement. (ECF No. 1211 at 1-5.)   However, on summary judgment, Ameranth and its expert Dr. Malek asserted that the orders had different screen counts by counting ***identical screens differently for each phone***. (*Id*.)  Again, in response, Ameranth did not even address or deny this improper counting. (*See generally*, ECF No. 1228).  Ameranth again had no competent evidence to support its baseless infringement claim.

**C.      Ameranth's False and Misleading Testimony and Evidence Spoliation**

Ameranth, more specifically its principal Keith McNally, repeatedly made misrepresentations to the PTO, the PTAB and this Court, when it suited the case.

**1.      The TransPad Misrepresentations**

The TransPad was a handheld device marketed by Ameranth in the late 1990's. When the TransPad was asserted as invalidating prior art in the *Menusoft* case, Mr. McNally testified it never worked and was never used in the patented inventions of his patent family.  However, when he needed it in this case to establish conception to antedate an invalidating reference, he testified the TransPad was used in Ameranth's patented system as a second handheld with a different display size.

More specifically, in *Menusoft*, Menusoft asserted TransPad was invalidating prior art to the '850, '325 and '733 patents because it was used in Ameranth's 21st Century Restaurant system, which Ameranth sold more than one year before the patent filing.  Faced with invalidity, Mr. McNally testified under oath as follows:

Q.      Did the TransPad use the invention of your patents?

A.      Absolutely not.  We had even discontinued any use of it by the time the invention came out for the first time in September of 1998.

(Ex. 5, Menusoft Trial Tr. at 82:09-13.)   McNally's testimony was clear – the TransPad was discontinued before Sept. 1998 and did not use the patented inventions.

Mr. McNally's testified quite differently here.   Ameranth was faced with potentially invalidating prior art references bearing dates before the filing date of '077 patent's parent application. (Cunningham Decl. at ¶15.)   To save the patents, Ameranth needed to antedate these references, *i.e.*, show that the claimed invention was conceived and reduced to practice prior to the dates of the prior art.  (*Id.*)

In attempting to antedate the references, Ameranth asserted it conceived the invention in September 1998 and reduced it to practice by demonstrating it at a November 1998 trade show.  Because all the asserted claims required ***two*** handheld

devices with different screen sizes, Ameranth needed to demonstrate a system with two different handheld devices at that November 1998 trade show.

In <u>this</u> case, when testifying under oath about the November 1998 trade show, Mr. McNally directly contradicted his testimony from the *Menusoft* case, stating:

> Q.    Okay.  And so it is your testimony that at this November 1998 show in Atlanta you demonstrated the system that included both the UltraPad and the TransPad?
>
> A.    Yes.

(Ex. 6, 3/13/2018 McNally Tr. at 717:12-16; *see also* 713:07-19; 717:17 - 718:09.) For the *Menusoft* case, the TransPad did ***not*** use the inventions of his patents and was "discontinued" before "September of 1998."  In this case, TransPad embodied the inventions and was "demonstrated" in November 1998.

### 2.    Ameranth's Repeated Misrepresentations that Its Products Practiced the Claimed Inventions and Spoliation of Evidence to Hide the Truth

Ameranth repeatedly represented in declarations under oath—(1) to the PTO to obtain the '077 patent, (2) to the PTAB in CBMs to save the validity of the patents, and (3) to both this Court and the Federal Circuit in further efforts to save the validity of the '077 patent—that Ameranth practiced the alleged inventions claimed in the '077 patent beginning in its first prototype in November 1998 and continuing in all its products through at least 2008, including its 21 CR, Improv Comedy Club Ticketing, eHost, HostAlert and Magellan systems. (*See, e.g.* Ex. 4 at 4.)  Not only were these representations false, but Ameranth destroyed evidence and attempted to conceal other evidence proving its products never practiced the claimed inventions.

Ameranth filed its patent infringement suit against Menusoft on June 28, 2007 in the Eastern District Texas.  At that point, Ameranth had an ethical obligation to

retain all technical documents, source code[8], and related documents concerning the conception, reduction to practice, design, development, marketing and sale of any prototypes or products it contended practiced the inventions of the patents.  In early 2008, Ameranth produced, in discovery, source code limited to its then current products to Menusoft – which was dated 2007-2008.

At that same time, despite the obligation imposed by the ongoing *Menusoft* lawsuit, Ameranth's CEO directed the intentional destruction of the remaining source code and technical documents relating to the alleged inventions and patented products prior to 2007-2008, evidence highly relevant to many issues in the present case, including conception and reduction to practice of the inventions and whether Ameranth's pre-2007-2008 products practiced the claimed inventions. (Ex. 7, 3/12/18 McNally Tr. at 297:22-302:16; 303:14-304:13; 316:02-13; Ex. 12, 3/14/18 McNally Tr. at 878:22-879:11.)

In this case, Ameranth sought to hide from Domino's the existence of the 2007-2008 source code that was not destroyed and which had been produced to Menusoft. When Ameranth served its '077 patent Infringement Contentions to Domino's, it identified its 21 CR, Improv Comedy Club Ticketing, eHost, HostAlert and Magellan systems as practicing the claimed inventions, but never produced source code for its systems. (Cunningham Decl. at ¶17.)  When asked in March 2018 why Ameranth had no source code, Mr. McNally testified, under oath, that all source code for all the Ameranth systems was destroyed in 2008. (Ex. 7, 3/12/18 McNally Tr. at 299:05-300:09.)  Mr. McNally testified that his successor as CEO, Mike Kucha, "didn't [just] throw out the [Ameranth] source code.  He got rid of almost everything including the source code." *Id.* at 305:6-15.   Indeed, Mr. McNally testified that "[v]irtually

---

[8] The only definitive evidence as to whether these systems practiced the '077 patent is the system source code.

everything" was thrown out by Mr. Kucha." *Id.* at 307:4-6.  Mr. McNally never mentioned the source code that was produced to Menusoft.

In April 2018, *after* Domino's served its expert report on invalidity, it discovered in Ameranth's production, which included over 500,000 pages, a scanned picture of a computer disk from the *Menusoft* case indicating that some Ameranth source code may still exist. (Cunningham Decl. at ¶17.)  Yet, although this case had been pending for seven years, Ameranth had never produced this source code, and Mr. McNally testified all code was destroyed.[9]  Once confronted, Ameranth confirmed that the source code existed, that it was in the possession of Ameranth's counsel, and that it had been produced in the *Menusoft* (in 2008) and *Par Tech* (in December 2011) cases pursuant to Local Rules in the E. Dist. of Texas. (*Id.*)

Domino's and the other Pizza Defendants' invalidity experts did not have the opportunity to analyze this 2007-2008 source code since it was discovered and produced *after* service of Defendants' invalidity expert reports. (Cunningham Decl. at ¶18.)  Significantly, ***Ameranth did not provide this source code to its own experts for analysis***, although if those products actually practiced the invention, the source code would prove it.  ***Indeed, Ameranth told its own expert, Dr. Shamos, that the source code was no longer available*** – although he admitted it would have been "useful" for his analysis. (Ex. 13, 5/29/18 Shamos Tr. at 113:12-114:07.)

The Food Ordering Defendants, whose expert deadline was later, did have the opportunity to analyze the 2007-2008 source code.  Starbucks' expert, Professor Franz, analyzed this source code – which included the 2007 and 2008 versions of Ameranth's 21 CR – and found that it definitively proves that Ameranth's products ***did not*** practice the claims of the '077 patent. (Ex. 8, Decl. of Franz and attached report.)  Prof. Franz found that the source code revealed: (1) the category and menu

---

[9] Ameranth's current counsel, John Osborn, was also counsel for Ameranth in the *Menusoft* and *Par* cases.

item buttons were hard coded into the handheld devices; (2) "the menu-related data received by the handheld includes no programming or program code; it is simply data"; (3) there is no evidence that a cascaded set of user interface screens is configured for the handheld device by any software on the server-side; (4) there is no evidence that there would be a different number of user interface screens between two different handheld devices; and (5) all the source code was specifically written for the Pocket PC platform which had a fixed display size across all devices. (Ex. 8, Franz Report at ¶¶206-261) (specifically at ¶210: "the materials quite clearly show that the application did not practice the Asserted Claims of the '077 patent.")

Amazingly, in its rebuttal report to Professor Franz, *Ameranth's expert Dr. Shamos again was not provided, and thus did not analyze this source code*. (Ex. 9, 9/7/2018 Shamos Tr. at 346:18-347:01.)  He instead criticized Dr. Franz analysis and asserted that source code evidence was not required to prove secondary considerations. (Ex. 10, Shamos Starbucks Report at ¶331) ("*Dr. Franz's incomplete and incorrect analysis of various versions of Ameranth's source code is fatally flawed* ..., including the very premise that there is any precedent for requiring 'source code' based proof to confirm secondary factors.")  Dr. Shamos later admitted, however, that because he never looked at the code, he had no knowledge if Dr. Franz's analysis was flawed, that Ameranth's counsel told him the analysis was flawed, and that he was not aware if counsel even looked at the source code.  (Ex. 9, 9/7/2018 Shamos Tr. at 348:11-350:01.)

Since Ameranth's products did not practice the invention of the '077 patent, Mr. McNally's assertions that the products did practice the invention, in declarations to the PTO during prosecution, to the PTAB during the CBMs, and to this Court and the Federal Circuit throughout this case, were all patently false.

**D.     Amaranth's Continued Vexatious Litigation**

Amaranth continues its vexatious enforcement of this clearly patent-ineligible patent family to this day. In April 2020, Amaranth sued Olo, Inc. in Delaware for infringement of U.S. Patent No. 9,747,651 (the "'651 patent"), another patent from the same family of patent-ineligible patents.  The Delaware court quickly dismissed the lawsuit on a Fed. R Civ. P. 12(b)(6) motion, finding the patent ineligible under 35 U.S.C. § 101 – relying primarily on the *Apple* and *Domino's* Federal Circuit decisions. (Ex. 14 ; Memorandum and Order re: Olo motion to Dismiss at 12-17, *Amaranth v. Olo, Inc.*, No. 20-cv-518 (D. Del. Oct. 13, 2020) ("the claims are similar to those of the related patent[s] that have already been found abstract by the Federal Circuit in two other cases: *Apple Inc. vs. Amaranth Inc*. … as well as *Amaranth Inc. vs. Domino's Pizza LLC*, … which the Federal Circuit decided in 2019.")) 

Then, just two days later, in its Notice of Supreme Court Order on Petition for Writ of Certiorari (ECF No. 1486) in this case, Amaranth stated its intention to bring further patent counts against Domino's, and the other consolidated defendants, on both claims of the '077 patent that have yet to be declared patent-ineligible, and yet another patent from the same patent-ineligible family, U.S. Patent No. 9,009,060 (the "'060 patent"), that it has yet to assert.  This vexatious litigation must end.

## III.  LEGAL STANDARD

In an "exceptional case," a court is authorized under 35 U.S.C. § 285 to award reasonable attorney's fees to the prevailing party.  An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S.Ct. at 1756.  Determining exceptionality is a "case-by-case exercise" of discretion considering the "totality of the circumstances." *Id*.  Further, a defendant need only establish fee entitlement by a preponderance of the evidence. *Id*. at 1758.

Under the generous standard of *Octane Fitness*, numerous (non-exclusive) circumstances may be considered. Factors previously articulated by the Supreme Court, such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," may still be considered. *See id*. at 1756 n. 6 (citing *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994)). However, under the relaxed *Octane Fitness* standard, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id*. at 1757. Additionally, the Supreme Court explained that "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. Indeed, "many varieties of misconduct can support a district court's exceptional case finding." *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) (stating "litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." (citation omitted)).

## IV.  ARGUMENT

### A.  Domino's is the Prevailing Party

Domino's is the prevailing party. All asserted claims of the four asserted patents are now invalid. Through CBMs before the PTAB, the asserted claims of the '850, '733, and '325 patents were held unpatentable, many affirmed by the Federal Circuit. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1245 (Fed. Cir. 2016). This Court held the asserted claims of the '077 patent invalid under 35 U.S.C. § 101. (ECF No. 1395), and the Federal Circuit affirmed. (ECF No. 1475). Thus, Domino's is a prevailing party under § 285. *See Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs.*, 394 F.3d 1348, 1350 (Fed. Cir. 2005) (affirming fees to party prevailing on

summary judgment of invalidity); *Deep Sky Software v. Southwest Airlines Co.*, Case No. 10-cv-1234-CAB (KSC), 2015 U.S. Dist. LEXIS 178030, at *5-7 (S.D. Cal. Aug. 19, 2015) (awarding fees to party prevailing in IPR that invalided the patent-in-suit).

**B.    This Case Is Exceptional Under *Octane Fitness***

    **1.    Ameranth Bringing a Baseless Case Renders this Case Exceptional**

Ameranth's claim of "infringement" of "valid" patents by Domino's was baseless, and it is this type of baseless claim for which courts find an exceptional case and award attorney fees.  An exceptional case finding is also warranted here.

"The subjective strength of a party's position," as opposed to "the correctness or eventual success of [that] position" is relevant to determining whether a case is exceptional.  *Cellspin Soft v. Fitbit, Inc.*, No. 4:17-CV-5928-YGR, 2018 U.S. Dist. LEXIS 112873, at *8 (N.D. Cal. July 6, 2018) (quotations omitted).

Ameranth knew before bringing this suit that the asserted claims of the '850, '325 and '733 patents were likely not valid.  These claims were substantially the same as the claims of these same patents invalidated in the *Menusoft* case.  An agreement in settlement to vacate the invalidity finding does not change the fact that the content of the patents was not patentable.

Ameranth also knew, or should have known, prior to bringing its claim for infringement claim of the '077 patent against Domino's, that the '077 patent was either invalid or not infringed.  All the evidence establishing non-infringement was publicly available at Ameranth's disposal.  Domino's different online menus at different stores is evident from placing orders.  Thus, Ameranth knew that Domino's system was not synchronous because each store has a different online ordering menu.  The contents of Domino's online JSON data menu (the alleged PHMC/PHC) could be electronically captured and analyzed.  So, Ameranth also knew or should have known that Domino's alleged PHMC/PHC was only a text file with hierarchical menu data – and contained no display formatting whatsoever, let alone formatting for display as

cascaded set of linked GUI screens, such as information about the display size of the handheld device.  Finally, Ameranth could count screens on the mobile apps.  Thus, Ameranth could have counted the screens on Domino's apps for ***comparable*** orders before filing suit to know its case was baseless.

Further, Ameranth should have known the '077 patent was invalid under §101 after the *Alice*[10] decision and the Federal Circuit's *Apple* decision holding claims of the '850, '325 and '733 patents patent-ineligible under § 101.  842 F.3d at 1229.  *ECT, LLC v. Shopperschoice.com, LLC*, No. 16-cv-81667 at *8 (S.D. Fla. Oct. 30, 2020) (attached as Ex. 15) is on point.  In *ECT*, the court found a case exceptional because plaintiff asserted a patent when it knew the patent was likely not eligible given a patent from the same family and with the same specification had been declared patent-ineligible in another action:

> "this case does stand out from the typical case in which claims of a patent are invalidated by a court, because in this case the patentee obtained an adverse ruling on the patent eligibility of claims from the same patent family and originating from the same specifications as those at issue here a full two years prior to filing of suit.

*Id.  Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1374-75 (Fed. Cir. 2017) is also similar to this case.  In *Inventor Holdings,* the Federal Circuit affirmed a finding of exceptional case based solely on the weakness of plaintiff's post-*Alice* positions (even though pre-*Alice* motions to dismiss were denied) and "the need to deter future 'wasteful litigation' on similarly weak arguments." *Id.* at 1377.  The Court reasoned that the claims were directed to "fundamental economic practice" nowhere near the "margins of patent-eligibility," and it was plaintiff's "responsibility to reassess its case in view of [then] new controlling law." *Id.* at 1377, 1379-80.

---

[10] *Alice Corp. v. CLS Bank Int'l.*, 134 S.Ct. 2347 (2014).

Thus, when the Federal Circuit found the '850, '325 and '733 patents ineligible under § 101, Ameranth knew the '077 was equally ineligible, yet it forced Domino's and others to expend substantial resources to defend.  Indeed, this Court found the *Apple* case to be highly relevant in invalidating the '077 patent.  (*See* ECF No. 195) (referencing and relying on *Apple* numerous times).  Ameranth baselessly asserted that the *Apple* decision was not relevant (Ex. 11, Ameranth Opening Brief at 16 ("*Apple* is not applicable."); see also *Id.* at 25-29 ("The district court erred by relying on the *Apple* case.") and ECF No. 1197-1 at 10;) – even though all the patents shared the same specification and the claims of the '077 patent and the previously invalidated patents all described the alleged inventions in purely functional terms – the same defect the Federal Circuit found rendered the previous patent claims abstract.  The Federal Circuit agreed that *Apple* was highly relevant. Ex. 1 to ECF No. 1475, Appeal Order at 11 ("Notwithstanding the difference from *Apple*, the district court found that the claims of the '077 patent ***suffered from the same ineligibility defects***. We agree …") (emphasis added.)  As did the Delaware court in *Olo, Inc*.  Ex. 14 at *13) ("Ameranth tries but fails to distinguish the earlier Federal Circuit cases, *Apple* and *Domino's*.")  Considering the *Apple* decision, decided post-*Alice*, Ameranth knew the '077 patent was likely not valid.  Yet, it continued a baseless suit knowing it could result in an exceptional case finding.

Ameranth continues to ignore these decisions today.  After the '850, '325, '733 and '077 patents were declared patent-ineligible in *Apple* and *Domino's*, Ameranth asserted the '651 patent against Olo, Inc. (Ex. 14.)  After the Delaware court declared this fifth patent in the family to be patent-ineligible, Ameranth threatened to sue Dominos and others, not only on a sixth patent from the same family, but also on claims from the ''077 patent that were not already asserted against Domino's – even though all these patent claims are clearly patent-ineligible.

## 2.   Ameranth's Shifting Positions Render This Case Exceptional

Ameranth's shifting positions further establish its positions were baseless – thus rendering this case exceptional. *Straight Path IP Grp, Inc. v. Cisco Systems, Inc.*, 2019 U.S. Dist. LEXIS 202541 at *1031-1035, (N.D. Cal. Nov. 20, 2019) (Taking inconsistent positions on infringement and validity demonstrates case is baseless and renders it exceptional.)   Here, Ameranth repeatedly took shifting, contradictory positions as to claim scope, including on the requirements of a PHMC/PHC, whether the claims required the elimination of scrolling, and on what constitutes synchronization.   Ameranth also took shifting positions on whether the TransPad used the invention.   These shifting contradictory positions justify an award of fees. *Id.* at 1031 ("[T]elling the Federal Circuit one thing and telling this Court the opposite on a critical point make this an 'exceptional case.'")

In *Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1373-76 (Fed. Cir. 2015), the Federal Circuit held the district court abused its discretion in denying a request for fees where plaintiff's "malleable" positions included disavowal of its own expert's statement.   In finding the presentation of contradictory testimony justified an award of fees, the court observed: "[d]efending against a constantly moving target" likely "increased the expense of litigation" for defendant and wasted judicial resources. *Id.* at 1374 (equating shifting litigation positions to "a frustrating game of Whac-A-Mole"); *see also Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, slip op. at 17 (N.D. Cal. Aug. 12, 2014) (finding case exceptional: "Kilopass's attempt to argue one thing to this Court, then argue a different thing to the BPAI, and then attempt to change its position before the BPAI only after it resulted in an unfavorable ruling from this Court amounts to 'gamesmanship.'"); *Straight Path,* 2019 U.S. Dist. LEXIS 202541 at *1034-35 ("[T]he record shows that Straight Path pursued an objectively baseless infringement theory against defendants by attempting to renege on explicit representations made to the Federal Circuit — representations made repeatedly in

order to preserve validity — which render the instant actions "one[s] that stand[] out from others."); *In re Personalweb Techs., LLC*, 2020 U.S. Dist. LEXIS 186226 at *40-47 and *74-75 (N.D. Cal Nov. 6, 2020) (Finding exceptional case: "[the Court has lived with the case and the lawyers for an extended period and has observed first-hand how PersonalWeb repeatedly flip flopped its positions to suit the argument of the day."); *Andersen Mfg. v. Wyers Prods. Grp., Inc.*, No. 18-cv-0235-WJM-STV; 2019 U.S. Dist. LEXIS 143730 (D. Colo., August 23, 2019)(finding plaintiff's "convenient position-shifting in this lawsuit" to warrant exceptional case finding.)

Hence, presenting misleading and contradictory evidence—whether in the same case or in related proceedings—is misconduct that can justify an award of attorney's fees under § 285. *See also Intellect Wireless, Inc. v. Sharp Corp.*, 45 F.Supp.3d 839, 851-53 (N.D. Ill. 2014) (noting, in dicta, that discrepancies between complaint, where it claimed to have a working prototype of invention, and its verified interrogatory responses, where it denied actual reduction to practice of the invention, is suggestive of litigation misconduct). Ameranth's shifting, contradictory positions in this case are much more egregious than those in the cases cited above. They warrant an award of attorneys' fees.

### 3.    Ameranth's Misleading This Court Renders Case Exceptional

Ameranth's misleading conduct also renders this case exceptional and justifies an award of attorneys' fees. *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1363 (Fed. Cir. 2013) (plaintiff attempts to "mask" its false testimony" and foreclose further discovery on conception to hide false testimony warrants exceptional case.); *Digital Reg of Tex., LLC v. Adobe Sys.*, No. C 12-1971 CW, 2015 U.S. Dist. LEXIS 29328, at *14 (N.D. Cal. Mar. 9, 2015) (Inventor's false testimony alone "warrant[ed] a determination of exceptional conduct.") Ameranth repeatedly misled this Court, the PTO, the PTAB and the Federal Circuit, including (1) Mr. McNally's false testimony regarding the TransPad to antedate prior art; (2) McNally's false

testimony that source code was destroyed to hide the fact that his products did not practice the claimed invention, as he had falsely testified to the PTO and PTAB; and (3) improperly using non-comparable orders for screen counts because using proper comparable orders would demonstrate non-infringement. Any one of these misrepresentations alone would justify an exceptional case.

In sum, any of (1) the baselessness of Ameranth's case, (2) Ameranth's shifting litigation positions or (3) Ameranth's misleading testimony would, individually, warrant an exceptional case finding. Taken together, this case is clearly "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) [and] the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756; see also *Drop Stop LLC v. Zhu*, 757 Fed. Appx. 994 at *11 (Fed. Cir. 2019) ("while the individual acts of misconduct might not make Defendants' conduct look exceptional, Defendants' conduct over the course of the entire litigation support the conclusion that this is an exceptional case") (internal quotations omitted). Domino's requests this case to be deemed exceptional under 35 U.S.C. § 285 and an award to Domino's of its attorneys' fees and non-taxable costs.

## C. Domino's Is Entitled to Fees and Costs for the CBMs and Appeals

Domino's also requests that Ameranth be ordered to pay Domino's fees and costs for the CBM reviews and Federal Circuit appeals. The CBMs rendered the asserted claims of three of the four patents-in-suit ineligible. Had validity of these patents been litigated, Domino's would be entitled to the fees and costs.

The Federal Circuit does not limit attorneys' fees by activity type. Instead, attorneys' fees under § 285 include "those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). In an analogous situation involving a reissue proceeding instead of an CBM, the Federal Circuit

decided that a prevailing party in an exceptional case is "entitled to reasonable attorney fees based upon the premise that the [concurrent PTO] proceedings substituted for the district court litigation on all issues considered by the PTO and the Board." *PPG Indus. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1569 (Fed. Cir. 1988). In this case, Domino's litigated the validity of the asserted claims before the PTAB and Federal Circuit instead of before the district court. Indeed, "the [CBM] proceedings essentially substituted for work that would otherwise have been done before this court." *Deep Sky Software*, 2015 U.S. Dist. LEXIS 178030, at *5-7 (awarding fees to party prevailing in IPR that invalided the patent-in-suit). Thus, the attorney's fees incurred by Domino's in the CBM proceedings should be recoverable as well.

Thus, Domino's also requests that this Court award Domino's its reasonable attorney's fees and non-taxable costs for the CBMs and all Federal Circuit appeals.

**D.    The Amount of Fees and Costs to be Awarded to Domino's Should Be Determined Following the Exceptional Case Determination**

Under Fed. R. Civ. P. 54(d)(2)(C), the Court may first rule that this case is exceptional but defer submissions on amount of any fee and costs award. Accordingly, Domino's requests that the Court delay receiving submissions on the amount of attorneys' fees and costs until this motion has been resolved. Pursuant to Fed. R. Civ. P. 54(d)(2)(C), Domino's estimates that its attorneys' fees and non-taxable costs, excluding expert witness fees, are approximately $2.6 million to date.

Dated:  November 6, 2020            Respectfully submitted,

By:  /s/ Thomas W. Cunningham
        Frank A. Angileri (*Pro Hac Vice*)
        fangileri@brookskushman.com
        Thomas W. Cunningham (*Pro Hac Vice*)
        tcunningham@brookskushman.com
        BROOKS KUSHMAN P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1000 Town Center, Twenty-Second Floor
Southfield, MI  48075-1238
Telephone: (248) 358-4400
Facsimile: (248) 358-3351

William E. Thomson, Jr. (SBN 47195)
wthomson@brookskushman.com
BROOKS KUSHMAN P.C.
601 S. Figueroa St., Suite 2080
Los Angeles, CA  90017-5726
Telephone (213) 622-3003
Facsimile: (213) 622-3053
*Attorneys* for *Defendants DOMINO'S PIZZA,
LLC and DOMINO'S PIZZA, INC.*

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served on November 6, 2020, with a copy of this document via the Court's CM/ECF system per Local Rules.  Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or first class mail on this date.

By: /s/ Thomas W. Cunningham
Thomas W. Cunningham

Memo in Support of Domino's
Second Renewed Motion For Exceptional Case
Case No. 3:12-cv-0733-DMS-WVG