# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERANTH, INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>DOMINO'S PIZZA, INC. and<br>DOMINO'S PIZZA, LLC<br><br>                                    Defendants. | Case No.:  12cv0733 DMS (WVG)<br><br>**ORDER GRANTING IN PART DEFENDANTS' SECOND RENEWED MOTION TO DECLARE CASE EXCEPTIONAL AND AWARD ATTORNEY FEES AND NON-TAXABLE COSTS** |

This case comes before the Court on Defendants Domino's Pizza, LLC and Domino's Pizza, Inc.'s second renewed motion to declare this case exceptional and award attorney fees and non-taxable costs under 35 U.S.C. § 285.  The original motion was filed after this Court found Ameranth's U.S. Patent No. 8,146,077 ("the '077 Patent") unpatentable under 35 U.S.C. § 101, and after Ameranth filed an appeal of that Order.  In light of Ameranth's appeal, the Court denied the original motion without prejudice.  After the Federal Circuit affirmed this Court's unpatentability finding, the Domino's Defendants renewed their motion.  Before briefing was completed on the renewed motion, Ameranth filed a petition for certiorari with the United States Supreme Court.  After the Court denied that petition, the Domino's Defendants withdrew their renewed motion and filed the

/ / /

present motion.  The Court has now reviewed the briefs, the record and the relevant legal authority, and grants the motion in part for the reasons set out below.

# I.

# BACKGROUND

This case is one of forty-three patent infringement cases that Ameranth has filed in this Court.[1]  The first case, *Ameranth, Inc. v. Pizza Hut, Inc.*, Case No. 11cv1810, was filed

---

[1] The full list of cases is as follows:  *Ameranth, Inc. v. Pizza Hut, Inc.*, Case No. 11cv1810, *Ameranth, Inc. v. Papa John's USA, Inc.*, Case No. 12cv0729, *Ameranth, Inc. v. Seamless North America, LLC*, Case No. 12cv0737, *Ameranth, Inc. v. TicketMob, LLC*, Case No. 12cv0738, *Ameranth, Inc. v. GrubHub, Inc.*, Case No. 12cv0739, *Ameranth, Inc. v. Pizza Hut, Inc.*, Case No. 12cv0742, *Ameranth, Inc. v. OpenTable, Inc.*, Case No. 12cv0731, *Ameranth, Inc. v. O-Web Techs., Ltd.*, Case No. 12cv0732, *Ameranth, Inc. v. Domino's Pizza, LLC*, Case No. 12cv0733, *Ameranth, Inc. v. Agilsys, Inc.*, Case No. 12cv0858, *Ameranth, Inc. v. ChowNow, LLC*, Case No. 12cv1201, *Ameranth, Inc. v. ATX Innovation, Inc.*, Case No. 12cv1656, *Ameranth, Inc. v. EMN8, Inc.*, Case No. 12cv1659, *Ameranth, Inc. v. Starwood Hotels and Resorts Worldwide, Inc.*, Case No. 12cv1629, *Ameranth, Inc. v. Micros Systems, Inc.*, Case No. 12cv1655, *Ameranth, Inc. v. Hyatt Hotels Corp.*, Case No. 12cv1627, *Ameranth, Inc. v. Best Western Int'l, Inc.*, Case No. 12cv1630, *Ameranth, Inc. v. Marriott Int'l, Inc.*, Case No. 12cv1631, *Ameranth, Inc. v. Hotel Tonight, Inc.*, Case No. 12cv1633, *Ameranth, Inc. v. Hotels.com, LP*, Case No. 12cv1634, *Ameranth, Inc. v. Expedia, Inc.*, Case No. 12cv1654, *Ameranth, Inc. v. Kayak Software Corp.*, Case No. 12cv1640, *Ameranth, Inc. v. EMN8, Inc.*, Case No. 12cv1659, *Ameranth, Inc. v. Mobo Systems, Inc.*, Case No. 12cv1642, *Ameranth, Inc. v. NAAMA Networks, Inc.*, Case No. 12cv1643, *Ameranth, Inc. v. Orbitz, LLC*, Case No. 12cv1644, *Ameranth, Inc. v. Subtledata, Inc.*, Case No. 12cv1647, *Ameranth, Inc. v. Stubhub, Inc.*, Case No. 12cv1646, *Ameranth, Inc. v. Ticketmasters, LLC*, Case No. 12cv1648, *Ameranth, Inc. v. Travelocity.com, LP*, Case No. 12cv1649, *Ameranth, Inc. v. Fandango, Inc.*, Case No. 12cv1651, *Ameranth, Inc. v. Hotwire, Inc.*, Case No. 12cv1653, *Ameranth, Inc. v. Wanderspot LLC*, Case No. 12cv1652, *Ameranth, Inc. v. Usablenet, Inc.*, Case No. 12cv1650, *Ameranth, Inc. v. Hilton Resorts Corp.*, Case No. 12cv1636, *Ameranth, Inc. v. Ticketbiscuit, LLC*, Case No. 13cv0352, *Ameranth, Inc. v. Ticketfly, Inc.*, Case No. 13cv0353, *Ameranth, Inc. v. Eventbrite, Inc.*, Case No. 13cv0350, *Ameranth, Inc. v. MonkeyMedia Software Inc.*, Case No. 13cv0836, *Ameranth, Inc. v. Starbucks Corp.*, Case No. 13cv1072, *Ameranth, Inc. v. Domino's Pizza, LLC*, Case No. 13cv1520, *Ameranth, Inc. v. Fandango, Inc.*, Case No. 13cv1525, *Ameranth, Inc. v. Opentable, Inc.*, Case No.

on August 15, 2011, and originally named nine Defendants:  Pizza Hut, Inc., Pizza Hut of America, Inc., Domino's Pizza, LLC, Domino's Pizza, Inc., Papa John's USA, Inc., Opentable, Inc., Grubhub, Inc., Netwaiter, LLC and Laughstub LLC.  In a First Amended Complaint filed on September 13, 2011, Ameranth renamed the first eight Defendants from the original Complaint, dropped Defendant Laughstub, and added five additional Defendants:  Ticketmob, LLC, Exit 41, LLC, Quikorder, Inc., Seamless North America, LLC and O-Web Technologies, Ltd.  Ameranth filed a Second Amended Complaint on December 6, 2011, renaming all Defendants from the First Amended Complaint except Netwaiter.  In each of these Complaints, Ameranth alleged the Defendants were infringing its United States Patents Nos. 6,384,850 ("the '850 Patent") and 6,871,325 ("the '325 Patent").

That case was not the first case Ameranth filed alleging infringement of the '850 and '325 Patents.  The first case was *Ameranth v. Menusoft Systems Corp.*, Case No. 07cv0271, which was filed in the United States District Court for the Eastern District of Texas.  In that case, Ameranth alleged defendants Menusoft and Cash Register Sales & Service of Houston, Inc. were infringing the '850 and '325 Patents, as well as a third Ameranth Patent, U.S. Patent No. 6,982,733 ("the '733 Patent").  That case was litigated for over three years, and eventually tried to a jury.  At the conclusion of the trial, the jury returned verdicts of non-infringement for each defendant on all patent claims asserted,[2] and found those same patent claims were invalid as anticipated and obvious.

On June 23, 2011, Ameranth appealed that judgment.  In October 2011, after Case No. 11cv1810 was filed in this Court, the parties in the *Menusoft* case reached a settlement. *Menusoft*, ECF No. 331 at 1-2.  Pursuant to that settlement, the parties filed a joint motion

---

13cv1840.  Ameranth has also filed other patent infringement cases in this Court on other patents, but those cases are not part of this litigation.

[2] The claims submitted to the jury were claims 1 and 4 of the '850 Patent, claims 6, 9, and 10 of the '325 Patent, and claims 1 and 3 of the '733 Patent.

12cv0733 DMS (WVG)

for indicative ruling with the district court on a request to vacate the jury's invalidity verdicts. *Id.* The district court granted that motion, and indicated that if the Federal Circuit remanded the case for consideration of such a request, the court would grant that motion. *Menusoft*, ECF No. 332. Thereafter, two third-parties to that case, Profitstreams, LLC and Seamless (one of the Defendants in Case No. 11cv1810), filed motions for leave to file amicus briefs on the court's indicative ruling. *Menusoft*, ECF Nos. 333, 334. In each of those briefs, the parties informed the court that they were involved in litigation with Ameranth over the '850 and '325 Patents, and that the *Profitstreams* case involved the same claims adjudged to be invalid in *Menusoft*. For those reasons and others, amici urged the court to reconsider its indicative ruling and/or deny the anticipated motion for vacatur. Meanwhile, the *Menusoft* parties proceeded to file a motion to remand the appeal, which was granted, and then filed their joint motion to vacate the invalidity verdicts and judgment. *Menusoft*, ECF No. 348. After considering the amicus briefs and the joint motion, the court confirmed its indicative ruling, granted the motion, and vacated the invalidity verdicts and judgment. *Menusoft*, ECF No. 355.

The invalidity findings having been lifted, and following passage of the America Invents Act, *see* 35 U.S.C. § 299, Ameranth began filing additional cases in this Court. As to Defendants named in Case No. 11cv1810, Ameranth filed additional cases against some of them alleging infringement of the '077 Patent. Ameranth also filed other cases against new defendants alleging infringement of the '850, '325 and '077 Patents. Ameranth then filed another series of cases alleging infringement of the '733 Patent, either alone or in combination with the previously asserted patents.

In October 2013, after nearly all of the individual cases were filed and discovery had commenced, a majority of Defendants filed petitions with the Patent Trial and Appeal Board ("PTAB") seeking review of the '850, '325 and '733 Patents under the Transitional Program for Covered Business Method ("CBM") Patents. This Court stayed the litigation pending those proceedings. The PTAB instituted review on all three petitions, and it found certain claims of those Patents unpatentable under 35 U.S.C. § 101. On appeal, the Federal

Circuit affirmed the PTAB's determinations of unpatentability, and reversed the PTAB's determinations that the other claims were patentable. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1245 (Fed. Cir. 2016). Specifically, the Federal Circuit found all instituted claims of the '850, '325 and '733 Patents unpatentable under § 101. *Id.*

In light of the Federal Circuit's decision, the only remaining patent in this litigation was the '077 Patent. Various Defendants twice petitioned the PTAB for CBM review of the '077 Patent, but both of those petitions were unsuccessful.

With Defendants having exhausted their available remedies at the PTAB and Ameranth having exhausted its appeals of those decisions, litigation in this Court recommenced. The parties engaged in motion practice, discovery and Markman proceedings, and the Court resolved in Ameranth's favor another related case alleging a claim of patent interference concerning the '077 Patent. *See IPDEV Co. v. Ameranth, Inc.*, Case No. 14cv1303 DMS (WVG).

After the *IPDEV* case was resolved, the remaining patent infringement cases readied for trial, with the "Pizza Companies and System Providers" slated to go first. However, in its final round of pre-trial motions, the Pizza Hut Defendants filed a motion for summary judgment of unpatentability of the '077 Patent pursuant to 35 U.S.C. § 101. That motion was fully briefed and scheduled for oral argument, but three days before the hearing Ameranth and the Pizza Hut Defendants settled their dispute.

Pending dismissal of Ameranth's case against the Pizza Hut Defendants, the Domino's Defendants filed an *ex parte* motion to file a late joinder in Pizza Hut's § 101 motion, which the Court granted over Ameranth's objection. The motion was then reset for hearing and Ameranth was provided an opportunity to file a supplemental opposition to the motion, which it did. After a thorough review, the Court found the '077 Patent unpatentable under § 101, and granted the motion. Ameranth appealed that ruling to the Federal Circuit, which affirmed this Court's findings in an unpublished opinion. *See Ameranth, Inc. v. Domino's Pizza, LLC*, 792 Fed. Appx. 780 (Fed. Cir. 2019). Thereafter, Ameranth filed a petition for writ of certiorari with the United States Supreme Court, which

was denied.  *See Ameranth, Inc. v. Domino's Pizza, LLC*, 141 S.Ct. 249 (2020).  Following that decision, the parties submitted competing proposals on how to proceed with the litigation, which had been stayed again when Ameranth filed its appeal of the § 101 ruling. After reviewing those proposals, the Court continued the stay pending its ruling on the present motion.

## II.

## DISCUSSION

Title 35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  A "central aim" of this statute:

> is to prevent an alleged infringer from suffering a "gross injustice."  The injury to the alleged infringer is the focus ... § 285 "is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust ... to require it to bear its own costs."  Again, it is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur.

*Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) (internal citation omitted).

Until the Supreme Court's decision in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545 (2014), a case was not exceptional unless there was misconduct during the litigation or in securing the patent, or "'both (1) the litigation [was] brought in subjective bad faith, and (2) the litigation [was] objectively baseless.'"  *Id.* at 550 (quoting *Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). A showing of exceptional case also was subject to the "clear and convincing evidence" standard.  *Id.* at 557.

In *Octane Fitness*, however, the Supreme Court rejected both the substantive test for exceptionality and the "clear and convincing evidence" standard.  The Court found the substantive test was "overly rigid" and "too restrictive."  *Id.* at 555.  Instead, the Court held that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case

exercise of their discretion, considering the totality of the circumstances." *Id.* at 554. In making that determination, the Court explained that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* Factors relevant to those issues include, "among other factors, 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 554, n.6. Courts may also consider "whether a party knew or willfully ignored evidence of the claims' meritlessness; whether the meritlessness could have been discovered by basic pretrial investigation; or whether the meritlessness was made clear early in the litigation." *Printeron, Inc. v. BreezyPrint Corp.*, No. H-13-3025, 2015 WL 7149442, at *2 (N.D. Tex. Nov. 10, 2015). On the burden of proof, the Court lowered the standard from "clear and convincing" evidence to a "preponderance" of the evidence. *Octane Fitness*, 572 U.S. at 557-58.

Here, the Domino's Defendants raise a number of arguments in support of their request that the Court declare this case exceptional. First, the Domino's Defendants argue Ameranth's case was baseless. Specifically, the Domino's Defendants assert Ameranth knew or should have known that the '850, '325 and '733 Patents were invalid based on the jury verdict in *Menusoft*. The Domino's Defendants also assert Ameranth should have known, based on publicly available information, that they did not infringe the '077 Patent, and that Ameranth should have known the '077 Patent was invalid under § 101 after the Supreme Court's decision in *Alice* and the Federal Circuit's decision in *Apple*. Second, the Domino's Defendants argue Ameranth's positions on several issues shifted during the litigation, and that Ameranth misled the Court on a number of other issues.

## A. Substantive Strength of Litigation Position

The Domino's Defendants' opening argument is that Ameranth's case was baseless. On the '850, '325 and '733 Patents, the Domino's Defendants argue Ameranth knew or should have known those Patents were invalid based on the jury verdicts in *Menusoft*.

Ameranth responds that the *Menusoft* jury invalidated only certain claims from those Patents, none of which were asserted in this case. Ameranth asserts the remaining patent claims, and specifically, the claims asserted in this case, were unaffected by the *Menusoft* case, and Ameranth was entitled to rely on the general presumption of validity in pursuing those claims here.

There is no dispute the '850, '325 and '733 Patents were entitled to a presumption of validity when they were issued, 35 U.S.C. § 282(a), and that Ameranth was entitled to rely on a presumption of good faith when it first asserted its rights in those Patents. *See Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018) (stating that upon issuance of valid patent, patentee is entitled to presumption of good faith in asserting its patent rights against an accused infringer). However, the *Menusoft* verdicts and Ameranth's request to vacate those verdicts raise questions about the strength of those presumptions here. As stated above, some of the claims in the '850, '325 and '733 Patents were found invalid in *Menusoft*. Although Ameranth asserted different claims here, the *Menusoft* verdicts cast a cloud on the Patents, and indicated a weakness in Ameranth's position. Ameranth's request to vacate those verdicts could be construed as an acknowledgement of that weakness, and an effort to remove that cloud from this litigation and other litigation on those Patents. *See Wang Labs. v. Toshiba Corp.*, 793 F.Supp. 676, 678 (E.D. CA 1992) (setting out public policy concerns surrounding vacatur of patent invalidity findings).

Ameranth's position on the '077 Patent is also questionable. On the issue of infringement, the Domino's Defendants argue Ameranth knew or should have known that they did not infringe. Specifically, the Domino's Defendants assert that the claims of the '077 Patent required a "synchronous" system, and that under Ameranth's construction of that term, that meant the system had to be "consistent." The Domino's Defendants contend that a review of their publicly available online ordering system for their more than 5,000 stores would have revealed that their system was not consistent, and therefore did not infringe. Ameranth does not address this particular argument. Rather, it responds to a

8

different argument, namely that Ameranth took conflicting positions on the construction of "synchronous," which according to the Domino's Defendants, supports a finding that Ameranth litigated this case in an unreasonable manner.

On the latter issue, the Court agrees with the Domino's Defendants that Ameranth took inconsistent positions on the meaning of "synchronous." During claim construction, Ameranth proposed that "synchronous" be construed as "made, or configured to make, consistent."[3] (ECF No. 865 at 12.[4]) Or as explained by Ameranth's counsel at the Markman hearing, "synchronous" or "synchronized" means "that the same information provided to users via display of user interfaces is presented consistently to different client devices." (ECF No. 906 at 154.) Stated simply, the point of the invention was "to attain consistency across the system[.]" (*Id.*) Ameranth maintained that position when defending the '077 Patent in the *IPDEV* case, arguing that "synchronization" "means that the information in the master menu has to be substantively the same as all of the menu items, modifiers, submodifiers[,] categories that appear in the programmed handheld menu configuration." *IPDEV*, ECF No. 85 at 8. Again, "[s]ubstantively everything on the master server has to have a corresponding element on the programmed handheld menu configuration on the handheld. That is the synchronous element of it." *Id.* at 9. In defending against summary judgment of noninfringement, however, Ameranth changed tack, and asserted the '077 claims did "not require that all master menu content … be synchronized in its entirety to the handheld devices." (ECF No. 1451 at 19.) Contrary to its previous position, Ameranth stated, "The claims *do not* require that there … be 'overall consistency' in the way Domino's incorrectly defines it." (*Id.* at 11.)

/ / /

---

[3] The Court notes Ameranth's proposed construction in this case is consistent with its proposed construction of a similar phrase in *Menusoft*, *see Menusoft*, ECF No. 73 at 10, which construction the *Menusoft* court adopted. *See Menusoft*, ECF No. 106 at 6-8.

[4] The ECF citation here and similar ECF citations throughout this Order refer to the docket in Case No. 11cv1810.

Ameranth disputes that it took inconsistent positions on "synchronous" by raising arguments about claim construction and recharacterizing its counsel's argument during the *IPDEV* hearing. (*See* Opp'n to Mot. at 22-24.)  However, the claim construction arguments are nothing more than red herrings, and the briefs and transcripts speak for themselves. What those documents reveal to the Court is a direct inconsistency in Ameranth's position on "synchronization."  *Compare IPDEV*, ECF No. 85 at 8 (stating "synchronization" "means that the information in the master menu has to be substantively the same as all of the menu items, modifiers, submodifiers[,] categories that appear in the programmed handheld menu configuration") *with* ECF No. 1451 at 11 ("Critically, the claims do not require that all system menu data must be synchronized with all connected devices.  The claims do not require that there must be 'overall consistency' in the way Domino's incorrectly defines it.")

Applying Ameranth's original understanding of "synchronous," the Court agrees with the Domino's Defendants that Ameranth's position on infringement of the '077 Patent was weak.  Ameranth identified the accused system as "Domino's Ordering System," not the system for any individual Domino's store.  As the Domino's Defendants point out, the online menus for Domino's stores were available to the public, and a cursory review of those menus would have established that different stores have different menus.  (Mem. of P. & A. in Supp. of Mot. at 19.)  In other words, they were not "synchronous."  Ameranth disputes that ultimate conclusion, but does not dispute the facts upon which it is based, which reflect the weakness of Ameranth's position on infringement of the '077 Patent.

The Domino's Defendants argue Ameranth's invalidity position on the '077 Patent was also weak after the Supreme Court's decision in *Alice* and the Federal Circuit's decision in *Apple*.  Certainly, Ameranth had a "responsibility to reassess its case in view of" *Alice*, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379 (Fed. Cir. 2017) (citing *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013)), and it had ample opportunity to do so.  Indeed, when the *Alice* decision was issued, this litigation was stayed and the parties were addressing § 101 issues before the

PTAB.  The Federal Circuit then resolved those issues in *Apple*, finding certain claims from the '850, '325 and '733 Patents unpatentable under § 101.

Ameranth argues that neither *Alice* nor *Apple* provided a basis for Ameranth to doubt the validity of the '077 Patent, particularly because the PTAB rejected a challenge to the '077 Patent after those decisions were issued.  However, as the Domino's Defendants point out, the PTAB declined to institute review of the '077 Patent post-*Alice* and post-*Apple*.  (ECF No. 125-5, Ex. 4.)  It did not, as Ameranth suggests, find the claims of the '077 Patent "to be valid and patentable[.]"  (Opp'n to Mot. at 4.)  Therefore, the PTAB decisions do not support Ameranth's argument that it had a reasonable basis to believe the claims of the '077 Patent were valid after *Alice* and *Apple*.

Ameranth also argues it had a reasonable basis to believe the claims of the '077 Patent were valid because Defendants did not oppose lifting the stay of this case in January 2017, and did not move for summary judgment at that time.  It is true Defendants did not oppose lifting the stay in January 2017, but that position hardly constitutes an acknowledgement or concession on their part that the '077 Patent was valid or beyond challenge.  That Defendants did not file a motion for summary judgment immediately after the stay was lifted is also not helpful to Ameranth.  After the stay was lifted, the parties had to regroup and reposition the case in light of the Federal Circuit's finding that the '850, '325 and '733 Patents were invalid.  Given the number of Defendants involved, that took time.  Ameranth also filed a significant and serious motion to disqualify a member of the defense counsel team as well as his law firm.  (*See* ECF No. 629.)  The parties also began discovery in earnest, which led to heavy motion practice on those issues.  In addition, the parties had to prepare for the Markman hearing and the *IPDEV* trial.  Given all of the moving parts and parties in this litigation, any lag time in the filing of the § 101 motion cannot reasonably be construed as an indication that Defendants thought it was unclear "that [the] claims of the '077 Patent were ineligible."  (Opp'n to Mot. at 5.)

Despite Ameranth's arguments, the Court agrees with the Domino's Defendants that Ameranth's litigation position on the validity of the '077 Patent was especially weak after

*Alice* and *Apple*.  The '077 Patent was part of the same family as the '850, '325 and '733 Patents, all of which were declared invalid by the Federal Circuit in *Apple*.  In a case presenting similar facts, the court did not hesitate to find that "no reasonable patent litigant would have believed" the claims in the related patent were viable.  *Kindred Studio Illustration & Design, LLC v. Elec. Commc'n Tech., LLC*, No. 2:18-CV-07661 (GJS), 2019 WL 3064112, at *4 (C.D. Cal. May 23, 2019).  The same may be said for Ameranth's position here.  Indeed, the facts of this case are even more compelling than the facts in *Kindred Studio*, where the patentee was faced with one finding of invalidity by the district court.  Here, Ameranth was presented with two decisions, one from the PTAB and the other from the Federal Circuit, finding the '850, '325 and '733 Patents ineligible.  Thus, the reasoning of *Kindred Studio* applies with even more force here, and weighs squarely in favor of an exceptional case finding.

**B.    Manner of Litigation**

Turning to the second factor, the manner in which the case was litigated, the Domino's Defendants raise two arguments.  First, they argue Ameranth's positions on certain issues shifted throughout the case, particularly, its positions on the terms "synchronous," "PHMC/PHC," and the issue of scrolling.  Second, the Domino's Defendants argue Ameranth misled the Court on a number of issues, specifically, Keith McNally's testimony regarding the TransPad and the destruction of Ameranth's source code, and the issue of screen counts.

The Court addressed the "synchronous" issue above, and thus starts its discussion here with the issue of the "PHMC/PHC."  The parties' arguments on this issue are less than precise, but the Domino's Defendants appear to argue that Ameranth took inconsistent positions on whether the "PHMC/PHC" had to have information about the size of the handheld device.  Ameranth responds that the Court's claim construction did not require that the "PHMC/PHC" have information about the size of the handheld device, and that its infringement theory was consistent with the Court's claim construction that the

/ / /

"PHMC/PHC" be formatted outside the handheld device.  Ameranth also argues that the accused "PHMC/PHC" included formatting information, contrary to Domino's suggestion.

Ameranth's arguments, however, do not address the Domino's Defendants' specific point, which is that Ameranth took different positions on whether the "PHMC/PHC" had to contain information about the size of the handheld device.  On that particular issue, the record supports the Domino's Defendants' position that Ameranth again took inconsistent positions depending on whether the issue was infringement or validity.  (*Compare* ECF No. 1421-7 at 7 (Ameranth's infringement expert Sam Malek, Ph.D. stating ████████ ████████████████████████████████████████████████████████) *with* ECF No. 1109-19 at 3 (Ameranth's validity expert Michael Shamos, Ph.D. agreeing that ████████ ████████████████████████████████████████████).

On scrolling, the Domino's Defendants raise a similar argument, namely that Ameranth took different positions on scrolling depending on the issue at hand. Specifically, in its efforts to obtain the Patent and uphold its validity, Ameranth told the Patent Office and then the Federal Circuit that the invention eliminated the need for scrolling.  However, during claim construction in this Court, Ameranth argued the claims did not preclude scrolling.  Ameranth responds that its position on scrolling has been consistent, namely, that the invention reduced the need for scrolling, but did not eliminate scrolling entirely.

Unlike the "synchronous" and "PHMC/PHC" limitations discussed above, which were part of the claims, scrolling, or the absence thereof, "is not claimed."  (ECF No. 1475 at 19.)  Thus, to the extent Ameranth took inconsistent positions on this issue, it is unclear what effect, if any, that had on this litigation.  Given the collateral nature of this issue, the Court cannot say Ameranth's conduct here was unreasonable.

Next, the Domino's Defendants argue that Ameranth's principal Keith McNally made misrepresentations in this case concerning Ameranth's TransPad product. Specifically, the Domino's Defendants assert Mr. McNally testified during his deposition in this case that Ameranth used the TransPad product during a November 1998 trade show

after testifying to the contrary in the *Menusoft* trial and elsewhere.  Ameranth disputes that Mr. McNally's testimony was inconsistent.  It explains there were two versions of the TransPad, and that Mr. McNally's testimony in *Menusoft* was referring to the first version while his testimony in this case referred to the second version.

Although there does appear to be an inconsistency in Mr. McNally's testimony, that inconsistency was not brought to this Court's attention prior to the present motion.  Furthermore, and contrary to Domino's suggestion, that testimony was not offered directly to this Court.  Clearly, inconsistent testimony is a cause for concern, and it should be explored.  However, based on the current record, the Court cannot say Mr. McNally's testimony was intentionally inconsistent or that he was attempting to mislead the Court.  His inconsistent testimony, standing alone, does not make this an exceptional case.

Next, the Domino's Defendants argue Ameranth engaged in litigation misconduct by withholding evidence of Ameranth's source code and then testifying, through Mr. McNally, that the source code did not exist.  Ameranth responds that it did not withhold the source code, and that Mr. McNally's testimony was neither false nor misleading.  The Court finds no misconduct here.  The Domino's Defendants do not dispute that Ameranth produced evidence of the source code in its document productions in April 2012 and May 2013.  That the Domino's Defendants may not have recognized that evidence until after Mr. McNally's deposition does not mean Ameranth withheld it.  Accordingly, this allegation does not support an exceptional case finding.

The Domino's Defendants' next allegation of litigation misconduct concerns the issue of screen counts.  Specifically, the Domino's Defendants allege Ameranth submitted misleading evidence in an effort to prove that they (and other Defendants) met the "different number of screens" limitation.  Ameranth disputes that there is any discrepancy

/ / /

/ / /

/ / /

/ / /

12cv0733 DMS (WVG)

in its evidence of screen counts, and also argues this is a factual issue that is not amenable to resolution on the present motion.[5]

On the comparison of the iPhone 4S and the Samsung Galaxy S7, the Court agrees with the Domino's Defendants that the discrepancy in the screen counts appears to be the result of the new/existing customer distinction. Ameranth does not dispute this difference in the ordering sequence for these two phones, or that the difference was the cause of the differing screen counts. Instead, it points to a comparison of another set of phones, the iPhone 5 and the Samsung Galaxy S3, to support its position that the Domino's Defendants met the screen count limitation.

The screen counts in this latter comparison appear to be different, which would support Ameranth's position on infringement, but whether Domino's meets the screen count limitation is not the issue here. Rather, the issue here is whether Ameranth attempted to mislead the Court with its screen count evidence. Ameranth appears to be avoiding this issue by directing the Court's attention to other issues, like whether Domino's infringed the Patent.[6] It is unclear whether this is an intentional strategy on the part of Ameranth or a misunderstanding of the issues. In any case, it raises concerns about Ameranth's motives. Nevertheless, on the issue of screen counts, the Court cannot say the evidence reflects an intent to mislead the Court as opposed to a less than precise analysis of the evidence. If

---

[5] Ameranth offers a broader argument that the motion raises a number of "factually intensive and credibility-based issues that were never pled or resolved." (Opp'n to Mot. at 2.) Ameranth argues it is improper for the Court to resolve those issues here, and that the motion should be denied on that basis alone. (*Id.* at 2-3.) In support of that argument, Ameranth relies on *Spineology, Inc. v. Wright Medical Technology, Inc.*, 910 F.3d 1227 (Fed. Cir. 2018). However, the Court agrees with the Domino's Defendants' interpretation of that case, and their assertion that the case does not support Ameranth's argument. (*See* Reply at 2.)

[6] Ameranth's responses to other arguments are similarly off point. For instance, Ameranth's arguments concerning the TransPad were misdirected to issues of conception and reduction to practice. Ameranth's response to the arguments about the "PHMC/PHC" were also off base.

anything, the screen count evidence, and the timing of Ameranth's production of that evidence, reflects a weakness in Ameranth's infringement position, not necessarily an unreasonable litigation tactic.

The Domino's Defendants' final argument is that Ameranth is continuing "its vexatious enforcement of this clearly patent-ineligible patent family to this day." (Mem of P. & A. in Supp. of Mot. at 17.)  In support of this argument, Domino's cites to another case Ameranth filed recently against Olo, Inc. in the United States District Court for the District of Delaware, alleging infringement of another patent from the '077 Patent family, United States Patent No. 9,747,651 ("the '651 Patent"),[7] and Ameranth's filing in this Court indicating its intent to bring additional claims against Domino's and other Defendants on two claims of the '077 Patent that remain valid, and another patent from the same family, United States Patent No. 9,009,060 ("the '060 Patent").  Ameranth responds that neither of these filings is evidence of vexatious litigation.

Clearly, Ameranth is not shy about enforcing its patent rights.  Indeed, although Ameranth at one point attempted to commercialize the inventions disclosed in the Patents-in-Suit, its current business model appears to be focused on patent licensing rather than commercializing its own products.  This business strategy is evident in the number of cases Ameranth has filed in courts across the country, including appeals to the Federal Circuit and writs to the United States Supreme Court.  However, the filing of all of these cases, in and of itself, does not make Ameranth a vexatious litigant.  *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061 (9th Cir. 2007) (citations omitted) (emphasizing "that the simple fact that a plaintiff has filed a large number of complaints, standing alone, is not a basis for designating a litigant as 'vexatious.'")  Rather, that determination depends on a

---

[7] *See Ameranth v. Olo, Inc.*, Case No. 20cv518, United States District Court for the District of Delaware.  In that case, the court, relying on the Federal Circuit's decisions in *Apple* and *Domino's*, found the '651 Patent unpatentable under § 101, and dismissed the case.  (Mem. of P. & A. in Supp. of Mot. at 17.)  Ameranth has appealed that decision.  *See Ameranth, Inc. v. Olo, Inc.*, Case No. 21-1211, United States Court of Appeals for the Federal Circuit.

number of factors, which the Domino's Defendants have not addressed here.  *See id.* at 1058 (quoting *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).[8]  Thus, contrary to the suggestion of the Domino's Defendants, the mere existence of other lawsuits filed by Ameranth, without more, "does not mandate negative inferences about the merits or purpose of this suit."  *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351 (Fed. Cir. 2015).

What matters to this suit and this motion are the factors discussed above, and considering those factors, the Court finds this to be an exceptional case.  As explained above, Ameranth's substantive position on the '850, '325 and '733 Patents was weak from the outset.  Prior to filing this case, a jury had found that certain claims from those Patents were invalid as anticipated and obvious.  While that case was on appeal, Ameranth negotiated a settlement of that case, under which the parties agreed to jointly request that the district court vacate those invalidity findings.  Although the court granted that request, the jury's findings in *Menusoft* should have alerted Ameranth to potential weaknesses in its case on those three Patents.

Ameranth's position on the '077 Patent was also weak.  As discussed above, Ameranth had access to the Domino's Defendants' publicly available ordering systems, and according to Ameranth's initial position on the "synchronous" limitation in this case, which was consistent with its position in the *Menusoft* case, there were serious questions about whether that system was infringing.  Ameranth's substantive position on the validity of the '077 Patent was also weak after the Supreme Court's decision in *Alice* and the

---

[8]  Those factors include: "'(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.'"  *Id.* (quoting *Safir*, 792 F.2d at 24).

Federal Circuit's decision in *Apple*.  As stated above, Ameranth had a "responsibility to reassess its case" after *Alice*, *Inventor Holdings*, 876 F.3d at 1379, and there is little evidence that it did so.  On the contrary, the record reflects that Ameranth pushed ahead without any apparent concern that the '077 Patent might be found unpatentable.  That proved to be a mistake, and an especially obvious one after the Federal Circuit's decision in *Apple*.  Ameranth's intent to continue with this litigation, and to pursue litigation on other patents from the same family, is indicative of its obstinate position, and suggests a need to deter similar conduct in the future.  *See Innovation Sciences, LLC v. Amazon.com, Inc.*, No. 2020-1639, ___ Fed. Appx. ___, 2021 WL 28216, at *2 (Fed. Cir. Jan. 5, 2021) (holding "that a district court is 'within the scope of its discretion in finding [a] case to be exceptional based on the weakness of [a party's] § 101 arguments and the need to deter similarly weak arguments in the future.'"); *see also Edekka LLC v. 3balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 WL 9225038, at *4 (E.D. Tex. Dec. 17, 2015) (stating questions about whether patentee engaged in a "reasonable and thorough presuit investigation regarding the § 101 standard and relevant authority before filing a significant number of lawsuits … identifies a clear need to advance considerations of deterrence.")

The manner in which this case was litigated is not the stronger of the Domino's Defendants' arguments, but it, too, supports a finding that this case is exceptional.  As explained above, Ameranth shifted its long-held position on a central element of its invention, namely that the system be "synchronous" or "synchronized," to avoid a finding that the Domino's Defendants did not infringe.  Ameranth also shifted its position on another central element, the "PHMC/PHC."  Ameranth's conduct with respect to the issues of scrolling and source code was not necessarily unreasonable, but that does not detract from the other factors set out above, including Ameranth's conduct on the issues of the TransPad testimony and the screen counts, which raise serious questions and concerns about Ameranth's litigation conduct and strategy.

/ / /

/ / /

As set out above, that ambitious strategy included filing more than forty cases in this Court.[9]   The first case in this series of cases, Case No. 11cv1810, included several Defendants and alleged claims based on the '850 and '325 Patents only.   Thereafter, Ameranth proceeded to file new cases against individual Defendants alleging infringement of the '077 Patent and the '733 Patent.   This scattershot approach made for unwieldy litigation, and created procedural and logistical challenges well beyond the ordinary patent case.   It also resulted in repetitive, duplicative, and unnecessary motion work on behalf of all parties and the Court.

Ameranth's decision to file all of these cases at the same time also complicated the litigation and slowed its progress.   Although a small handful of Defendants settled with Ameranth shortly after their cases were filed, the great majority did not, and those remaining Defendants were not part of the same industry.   Rather, they were from a variety of industries, including restaurants, online restaurant reservation companies, online food delivery companies, hotels, online hotel reservation companies, online travel reservation companies, and online entertainment ticket companies, not to mention the tech giant Apple. Some of these Defendants entered into a joint defense agreement, which helped to consolidate certain issues and streamline certain proceedings, but given the diverse nature of Defendants' business operations, each Defendant often had to file its own pleadings or a supplement to the joint pleading to make its individual position known.   Although Ameranth was within its rights to file suit against all of these Defendants, its decision to cast such a wide net certainly prolonged the litigation in contravention of Federal Rule of Civil Procedure 1, which states the Federal Rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive

---

[9] Although the present motion was filed in the Domino's case only, the Court considers Ameranth's wider litigation in this Court in ruling on the present motion.   *See Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1377 (Fed. Cir. 2020) (stating broader context of plaintiff's lawsuit against defendant was "relevant consideration[ ]" on exceptional case motion).

determination of every action and proceeding." Fed. R. Civ. P. 1. With the first case, Case No. 11cv1810, now approaching its ten-year anniversary, this litigation can hardly be said to have fulfilled that purpose. Certainly, Ameranth does not bear complete responsibility for the delay in resolving these cases, but it does bear responsibility for its initial decision to file as many cases as it did and to proceed with all of them simultaneously.

Another point also deserves mention: Ameranth's settlement with Pizza Hut. Pursuant to the Court's case management orders, Pizza Hut was the first Defendant scheduled for trial with Ameranth. Two weeks before the trial was scheduled to start, the Court issued an order setting Pizza Hut's § 101 motion for argument. Three days after that order issued, and approximately two weeks before the trial was scheduled to begin, Ameranth and Pizza Hut entered into a confidential settlement agreement. Although there may have been many reasons for the parties' decision to settle, the timing of the settlement, and Ameranth's attempt thereafter to avoid a prompt ruling on the § 101 issue, is "troubling." *Cf. Shipping and Transit, LLC v. Hall Enterprises, Inc.*, No. CV 16-06535-AG-AFM, 2017 WL 3485782, at *7 (C.D. Cal. July 5, 2017) (stating plaintiff's repeated dismissal of its own lawsuits to evade a ruling on the merits while continuing to file new lawsuits advancing the same claims is "troubling.") This is especially so given Ameranth's settlement with the *Menusoft* Defendants after the jury's invalidity findings on the '850, '325 and '733 Patents, and the parties' agreement in that settlement to seek vacatur of those findings.

Taking a further step back and considering Ameranth's overall litigation conduct is also revealing. From that perspective, Ameranth has had limited success before the one jury to consider its Patents, as well with the PTAB, the Federal Circuit and this Court. The only jury to have considered the '850, '325 and '733 Patents found to be invalid and not infringed, and the PTAB and the Federal Circuit reached similar conclusions. This Court and the Federal Circuit then found that certain claims of the '077 Patent were patent ineligible. Yet, those losses have not had a deterrent effect on Ameranth's behavior. On the contrary, Ameranth had the jury verdicts erased, and settled with the Pizza Hut

Defendants on the eve of trial before the Court could hear their § 101 motion.  When that motion was eventually heard and decided adverse to Ameranth, Ameranth responded the same way it responded to its other losses, with an appeal to the Federal Circuit, where its loss was affirmed.  Considering this pattern of continued bullishness in the face of numerous defeats, and the totality of the circumstances discussed above, the Court finds this is an exceptional case under §285.

## III.

## CONCLUSION AND ORDER

For the reasons set out above, the Court grants the motion to declare this case exceptional.  As part of their motion, the Domino's Defendants requested fees for the CBMs and Appeals, but the Court declines to resolve that issue in the present order.  Rather, the parties should address whether those fees are reasonable in their briefing on the amount of fees and costs to be awarded.  Domino's shall file its opening brief on that issue on or before March 5, 2021.  Ameranth shall file its opposition brief on or before March 19, 2021, and Domino's shall file its reply brief on or before March 26, 2021.  Counsel shall also contact Judge Gallo's Chambers via email at efile_gallo@casd.uscourts.gov to schedule a settlement conference to occur as soon as practicable.

**IT IS SO ORDERED**.

Dated:  February 5, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court

12cv0733 DMS (WVG)